**ZELKOFF, d. b. a. TOM THUMB RESTAURANT, Appellant, v. BOWERS, Tax Commr., Appellee.**

Ohio Appeals, Tenth District, Franklin County.

No. 6000.   Decided March 24, 1959.

Carlton S. Dargusch, Jack H. Bertsch, Robert T. Fitzsimons, Columbus, for appellants.

Mark McElroy, Atty. Genl., John M. Tobin, Asst. Atty. Genl., Columbus, for appellee.

## OPINION

By BRYANT, J.

Thomas Zelkoff, appellant herein, for a number of years conducted a restaurant known as Tom Thumb Restaurant, 1628 Neil Avenue, Columbus, Ohio.

Under date of July 23, 1957, Stanley J. Bowers, Tax Commissioner of Ohio, appellee herein, made an assessment against Zelkoff for the period from January 1, 1953 to January 31, 1957, for sales tax allegedly due and unpaid for this period in the amount of $1,893.60.   To this was added a penalty of fifteen percent or $284.04 making a total of $2,177.64.

Application was made to the Tax Commissioner for a reassessment of the amounts due, which on January 24, 1958, resulted in an order reaffirming the total assessment originally made in the amount

of $1,893.60 with the fifteen percent penalty entirely suspended upon condition that the total amount be paid within thirty days, otherwise the full penalty to be added.

However, further consideration was given to the matter and the journal entry of January 24, 1958, was vacated by the order of February 20, 1958, in which the assessment was reduced to $1,251.42 with the penalty suspended upon condition of the payment of the full amount within thirty days, otherwise a penalty of $187.71 was added bringing the total amount due to $1,439.13.

The final order of the Tax Commissioner was appealed to the Board of Tax Appeals, where on July 2, 1958, the said Board affirmed, without change, the final order of the Tax Commissioner.

With reference to the pertinent facts, we quote the following from the second page of the opinion by the Board of Tax Appeals:

"From the evidence it appears that the appellant owned and operated the Tom Thumb Restaurant located at 1628 Neil Avenue, Columbus, Ohio, from sometime in 1941 until February 1, 1957. Food served on the premises was of two types, i. e., sold to be consumed on the premises and sold to be carried out. The appellant testified that the Tax Commissioner test checked this business in either 1948 or 1949, and that no assessments were made subsequent to that time until the one in issue. The evidence shows that after the business was sold on February 1, 1957, an examiner from the Tax Commissioner's office made an audit of the successor's cash register tapes for a two-week period running from February 16 to February 28, 1957. These tapes indicated carry-out sales, sales under forty-one cents, and taxable sales. For the audit period here in issue the sales invoice slips and register tapes had been destroyed by the appellant. There was also testimony to the effect that an audit was made on another Tom Thumb Restaurant owned by the appellant located at 23 North Third Street, Columbus, Ohio, at approximately this same time."

In its notice of appeal to this court from the final order of the Board of Tax Appeals, Zelkoff makes five assibnments of error as follows:

"1. The Board of Tax Appeals erred in affirming an assessment based upon a test check run against a successor vendor's business.

"2. The Board of Tax Appeals erred in holding that a vendor who does not have records of his exempt sales, may be assessed on the basis of a test check run against a successor vendor's business.

"3. The Board of Tax Appeals erred in affirming the assessment even though the tax commissioner did not consider all evidence relating to the vendor's exempt sales.

"4. The Board of Tax Appeals erred in affirming the assessment in the face of substantial evidence rebutting its correctness and validity.

"5. The Board of Tax Appeals erred in other respects, both in law and fact, apparent from the transcript, the record and the decision."

It is to be noted that in the proceedings before the Tax Commissioner, subpoenas were issued to Zelkoff on April 8, 1957, and again on May 3, 1957, ordering him to produce "all books, accounts, papers, and records, pertinent to and concerning the operation of any and all

business in which he was engaged for the period of January 1, 1953 to January 31, 1957, both inclusive, * * *." It further appears that Zelkoff represented to the examiners of the Tax Department that there were no records as to tax-exempt sales made from his place of business at 1628 Neil Avenue, Columbus, Ohio. In the file there appears the following sworn statement signed by Zelkoff:

"I, Thomas Zelkoff, who resides at 2115 Waltham Ave., Columbus, Ohio, in answer to the subpoena served on me for all records pertaining to the operation of my business at 1628 Neil Ave. from 1-1-53 to 1-31-57, hereby certify that there are no records of carry-out sales or sales under 41c for said period.

"Sworn to and subscribed before me this 22nd day of May, 1957."

In a report made by Examiner Charles B. Burtch, there appears the following statement:

"Accountant was questioned as to how he arrived at taxable sales He stated that he had been using the same percentage for several years and that they were furnished to him by the vendor and that they had been established by a test check run by our department. The vendor was then called and asked to produce any records of taxable sales. Vendor stated that he had none and also stated that the percentage of exempt sales being used had been taken from a test check made by our examiners. A subpoena was then issued to have vendor produce all records. Examiner then went to successor to see what records of taxable sales could be obtained. This disclosed that the successor, George Roberts, had managed both of the Tom Thumb Restaurants for the vendor for a period of approximately ten years. Immediately after he acquired this business he put in a new cash register and had a complete record of taxable sales. Two weeks of tapes were taken and a check was made as shown on Sheet No. 4 and is the basis for percentage of taxable sales used in this audit. This check shows 2.9% carryout and 21.9% of gross under 41c. Vendor was using 15% carryout and 28.3% of gross under 41c.

"Vendor in answer to our subpoena appeared in our office on May 22 and produced guest checks from his restaurant at 23 N. 3rd St. Vendor requested that we use these guest checks as a method of arriving at taxable sales. Vendor claimed that our department had made a check on both restaurants and had allowed him to use the same percentages on both restaurants and therefor the guest checks from 23 N. 3rd. would be a true indication of taxable sales for this audit. Examiner refused to use these guest checks. Vendor also claimed that the successor's operation was much different and that the check we are using for a basis of establishing taxable sales would not be a true picture of his operations. Vendor claimed that his successor had raised his prices and also added meals to his menu. Vendor claimed that while he operated he had nothing but a sandwich shop. The Examiner checked this with the successor and he states that he has raised no prices and that during the period of years that he managed this restaurant they had always served meals, such as hamburger steak plate, tenderloin steak plate and a pork chop dinner. His only addition to the menu being a Swiss Steak Dinner and Spaghetti Dinner. The Examiner knows

this to be a true situation as I have eaten in this restaurant many times. Successor was also asked if he had noticed any appreciable difference in the carryout trade. Successor stated that while he had no proof of carryout sales before he took over as owner he could notice no big change in these sales.

"Vendor admitted that his check was at least 8 or 9 years old and due to price increases during this time Examiner feels that 21.9% is a fair percentage and is allowing 22%. Vendor was very emphatic that his carryout could not be as low as 2.9% and Examiner has adjusted this and allowed 5%. This Examiner feels that 5% carryout and 22% under 41c are in line with this business in this location and deficiency is based on these percentages."

The several errors assigned by Zelkoff principally are directed to the evidence considered by the Tax Commissioner and by the Board of Tax Appeals. The first two assignments of error and much of the time in the argument of the case, complain about the use of a test check run against a successor vendor's business. The third and fourth assignments of error complain of alleged failure to consider all the evidence relating to vendor's exempted sales or failure to consider testimony allegedly rebutting the assessment, while the fifth assignment is general in nature.

The Board of Tax Appeals in its opinion relies upon the provisions of law requiring vendors to keep "complete and accurate records of sales of taxable property." See §5739.11 R. C., which reads as follows:

"Each vendor shall keep complete and accurate records of sales of taxable property, together with a record of the tax collected thereon, which shall be the amount due under §§5739.01 to 5739.31 inclusive. R. C., and shall keep all invoices, bills of lading, retained parts of canceled prepaid tax receipts, and such other pertinent documents, in such form as the tax commissioner requires by regulation. Such records and other documents shall be open during business hours to the inspection of the commissioner, and shall be preserved for a period of four years, unless the commissioner shall, in writing, consent to their destruction within that period, or by order require that they be kept longer."

Also relied upon is Rule No. 71 of the Tax Commissioner of Ohio which reads as follows:

"Vendors shall keep such complete and accurate records as will readily disclose all of the information required on the Sales Tax Return. In addition the vendor shall keep all invoices supporting claims for exemption, where such exemption is claimed by virtue of the nature of the item sold: he shall keep all sales invoices, cash register tapes, day books, bank deposit slips and such other records as may verify the gross sales figure; he shall keep all certificates of exemption in whatsoever form drawn to support claims for exemptions where such exemptions are claimed by virtue of the occupation or character of the purchaser: and he shall keep copies of the vendor's purchase orders which are tendered as a receipt upon the purchase of prepaid tax receipts from the County Treasurer or agent of the Treasurer of State, from which such receipts are purchased."

It would appear that it was the practice of Zelkoff and his employees to make out individual guest slips for each sale, that these slips numbered about one thousand slips per day or seven thousand slips per week. (Record, p. 10, 11.3 to 8.)

It further was clear that Zelkoff did not have any of these slips available at the time of the audit. At page eight of the record, Zelkoff testified as follows:

"Q. Did you have any sales slips available at the time of the assessment from—that is, sales slips from the restaurant under review?

"A. No, sir.

"Q. Why didn't you have any sales slips available, Mr. Zelkoff?

"A. Well, in the first place, we didn't have any room to keep them. You know, those things accumulate pretty fast."

It should be pointed out that the Board of Tax Appeals agreed with counsel for Zelkoff in objecting to the test check of the successor's business. (See B. T. A. opinion page 5, paragraph 2.)

It is apparent that Zelkoff relied upon a test check claimed to have been made in 1948 or 1949 in which the percentage of carry-out business and the percentage of sales in amounts below forty-one cents were established. (Record, p. 12.)

The sale of the business in this case took place on or about February 1. 1957, and the audit by the State Tax Department was begun within two weeks of that date. While it is true that storage of a four-year supply of sales checks would require considerable space, it appears unusual that not even six months or even one week supply of sales slips were available. Whatever the reasons may be, the fact is that a record of taxable sales was required to be kept and was not furnished even though several subpoenas were issued for it. Under such circumstances where the gross receipts arising from sales are established, all sales of tangible personal property are presumed to be taxable. Here the amount of gross receipts was not in dispute.

The Board of Tax Appeals relied upon the case of **Obert et al, v. Evatt, Tax Commr. et al, 144 Oh St 492,** decided February 28, 1945, holding that where a vendor claims the allowance of tax-exempt sales is insufficient, the burden of proof to support such claim is on the vendor This case also stands for the proposition that where the amount of gross receipts from sales is known, the burden of proof is on the vendor to show what part arises from tax-exempt sales. In the Obert case, supra, the second and third branches of the syllabus are as follows:

"2. Where a vendor liable under §5546-12a GC, claims that the Tax Commissioner in making an assessment by virtue of §5546-9a GC (as amended 116 Ohio Laws, pt. 2, 329, 117 Ohio Laws, 763, and 119 Ohio Laws, 45), has made an insufficient allowance for tax-exempt sales, the burden of proof rests upon such vendor.

"3. Where the amount of vendor's gross receipts from sales are known, the burden rests upon such vendor to show what part, if any, of such receipts resulted from sales of tax-exempt merchandise."

To the same effect is the holding in **Manton, dba Civic Center Grill & Bar v. Glander, Tax Commr., 150 Oh St 198,** in which the Obert case,

250

supra, was cited with approval as was also the case of **Edelstein v. Glander, Tax Commr., 148 Oh St 19.**

The Supreme Court of Ohio, in a long line of decisions, has consistently held that every sale or use of tangible personal property in Ohio is presumed to be taxable and the burden of proof is on the vendor to establish affirmatively his right to exemption. See **Merchants Cold Storage Co. v. Glander, Tax Commr., 150 Oh St 524; National Tube Co. v. Glander, Tax Commr. et al, 157 Oh St 407; The Standard Oil Co. v. Peck, Tax Commr., 163 Oh St 63, and Union Carbide & Carbon Corp. v. Bowers, Tax Commr. et al, 166 Oh St 419.**

We agree with the holding of the Board of Tax Appeals that it was not proper to use a test check of the business of another in computing and determining the various exempt percentages. The fact remains that under the statutes as presently in force and under the many decisions of the Ohio Supreme Court, the entire receipts arising from sales of tangible personal property could have been held to be taxable. Both the Tax Commissioner and the Board of Tax Appeals gave consideration to the testimony of Zelkoff and we do not believe that we would be justified in holding as a matter of law that their decision is contrary to law or the weight of the evidence. Zelkoff's own testimony in effect is that he relied during the audit period of January 1, 1953 through January 31, 1957, upon a test check alleged to have been made in 1948 or 1949. The Tax Commissioner and the Board of Tax Appeals held this was insufficient and we believe they were correct in so holding.

For the reasons above set forth, the five assignments of errors, in our opinion, are not well taken and must be therefore overruled, and the judgment of the Board of Tax Appeals affirming the final assessment made by the Tax Commissioner is affirmed and the cause remanded.

MILLER and DUFFY, JJ, concur.