### NATIONAL CITY BANK, Appellee,

#### v.

### FACILITIES ASSET MANAGEMENT, INC. et al., Appellants.

[Cite as *Natl. City Bank v. Facilities Asset Mgt., Inc.* (2001), 145 Ohio App.3d 340.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78410.

Decided Aug. 27, 2001.

*Charles J. Palmeri; Vorys, Sater, Seymour & Pease, Marcel C. Duhamel, James Hogan* and *Anthony J. O'Malley,* for appellee.

*The Roberts Law Firm, Kevin T. Roberts* and *Marianne K. Barsoum,* for appellants.

KARPINSKI, Administrative Judge.

Defendants-appellants Facilities Asset Management, Inc. ("FAM"), M & M Properties ("M&M"), and Michael and Maureen Badalamenti appeal from an order of the trial court denying their Civ.R. 60(B) motion for relief from cognovit judgments against them.

On February 4, 2000, National City Bank ("NCB") commenced this action against FAM to collect on a cognovit note and against the remaining defendants on cognovit guarantees of FAM's indebtedness on the note. The note had an original principal balance of $500,000. The administrative judge of the common pleas court entered judgment against all defendants, jointly and severally, in the amount of $494,097.46 plus statutory interest from the date of the judgment.

Approximately three months later, on May 1, 2000, defendants filed a motion for relief from judgment, supported by an affidavit of Michael Badalamenti. Defendants also filed a separate motion to consolidate the case with another case

involving similar cognovit proceedings on another set of instruments for a different indebtedness. Defendants' motion argued that NCB agreed to lend FAM $500,000 on the above loan and $400,000 on a line of credit. The $500,000 loan of the transaction was guaranteed by the Small Business Administration ("SBA").

The motion argued that "just prior to closing of the loans," however, NCB presented them with documents reflecting that it would offer them only the $500,000 loan and a $200,000 line of credit.[1] It argued that NCB's loan officer orally assured them (prior to the closing), however, that the additional $200,000 on the line of credit would be provided at a later date. They nevertheless signed the loan documents as written and proceeded with the transaction. The motion stated that NCB required FAM to pay approximately $87,000 out of the proceeds to cover back taxes owed to the state of Ohio. FAM ultimately exhausted the $200,000 line of credit and NCB refused to provide any further credit. The motion argued that NCB breached a duty of good faith and fair dealing, that NCB fraudulently induced defendants to enter into the loan documents, and that NCB was equitably estopped from enforcing the agreements.

NCB filed a brief in opposition to the motion for relief from judgment, supported by an affidavit of its loan officer and various other documents. The brief stated that FAM contacted NCB in February 1998 and filed a loan application in November 1998. The application was ultimately deactivated because of existing Ohio sales tax liens against FAM.

In May 1999, the loan application and request for the SBA guarantee were reactivated. After reviewing FAM's financial condition, deteriorating cash flow, and age of its accounts receivable, NCB issued a written loan commitment on June 9, 1999, for a $500,000 term loan and a $200,000 line of credit, well before the loan closing on July 14, 1999. It argued that, by its own express terms, the SBA guarantee of the $500,000 loan did not grant any right to defendants. NCB stated that FAM defaulted on the $500,000 loan on January 15, 2000, by failing to make a payment due. FAM had already defaulted on the $200,000 line of credit by failing to make a payment due on December 1, 1999. FAM further defaulted on January 10, 2000, by ordering NCB employees to leave the premises when they appeared to inspect its collateral and business records as provided in the loan documents.

---

1. The record shows that on June 9, 1999, approximately one month before the loan closings, NCB issued a loan commitment letter containing this information. The $500,000 loan subsequently closed on July 14, 1999. The $200,000 line of credit closing occurred thereafter on July 16, 1999.

Defendants filed a supplemental brief in support of their motion to vacate the cognovit judgments. The supplemental brief argued that the Badalamentis' signatures on their mortgages were not properly notarized. NCB responded by filing additional material in opposition. The trial court thereafter denied defendants' motion for relief from judgment and denied their request to consolidate this case, involving the $500,000 loan, with the case involving the $200,000 line of credit.

■ Defendants timely appeal.[2] They raise the following assignment of error:

"The trial court abused its discretion by denying appellants' Civil Rule 60(B) motion for relief from cognovit judgment, where appellants had both alleged and presented sworn evidence supporting causes of action for breach of a written loan agreement, fraud and equitable estoppel, thus denying appellants a full hearing on the merits of such claims."

This assignment lacks merit.

Defendants argue that the trial court improperly denied their motion for relief from judgment without conducting a hearing. They argue their motion was filed within a reasonable time of the cognovit judgment and presented sufficient evidence to support their defenses to warrant relief. After reviewing the record, we find that defendants have failed to show that the trial court erred or abused its discretion by denying relief from judgment.

The arguments in this case are similar to those rejected in other cases involving SBA guaranteed loans in which the banks making the loans allegedly made oral agreements to lend more than the face amount agreed to in writing in

---

2. On May 24, 2001, nine months after the appeal had been pending and five days before the scheduled oral argument, defendants filed a motion to remand the matter to the trial court to permit it to rule on a second motion for relief from judgment. The motion did not challenge the original grant of the cognovit judgments by the administrative judge but argued that the trial judge should have disqualified herself from ruling on their first Civ.R. 60(B) motion for relief from the cognovit judgments because she was related to a Vice President of NCB. Code of Judicial Conduct, Canon 3E(1)(d)(i). Defendants did not raise this argument in a supplemental assignment of error to challenge the trial court's ruling in this direct appeal.

According to defendants' motion, the relative was allegedly in NCB's Private Client Group, whereas the transaction was conducted by a different Vice President in NCB's Business Services Group. Neither affidavit in support of the motion, however, contained any evidence that the relative's employment relationship existed at the time the court made its ruling on the Civ.R. 60(B) motion. Compare *e.g., Cuyahoga Cty. Bd. of Mental Retardation v. Assn. of Cuyahoga Cty. Teachers of the Trainable Retarded* (1975), 47 Ohio App.2d 28, 32, 1 O.O.3d 168, 170–171, 351 N.E.2d 777, 781–782.

Under the circumstances, we deny by separate journal entry defendants' motion to remand the matter back to the trial court. Defendants have not sufficiently established the predicate of a conflict of interest to warrant disqualification and, after reviewing the record, we believe that any trial judge would have reached the same conclusion denying their first motion for relief from judgment.

the loan documents. See *e.g., Soc. Natl. Bank v. NCON Corp.* (Feb. 7, 1997), Lucas App. No. L–96–108, unreported, 1997 WL 51224; *Fifth Third Bank of N. Kentucky, Inc. v. Better Living T.V. & Appliance Rental, Inc.* (Sept. 20, 1993), Butler App. No. CA93–03–037, unreported, 1993 WL 369246, discretionary appeal not allowed (1994), 68 Ohio St.3d 1447, 626 N.E.2d 689 (Kentucky law).

 Contrary to their argument, defendants did not present sufficient operative facts to support their defense of breach of contract. The record shows that on June 9, 1999, NCB issued a commitment letter to FAM to lend it $500,000 in a demand loan and $200,000 in a line of credit. It is undisputed that NCB, in fact, lent these precise amounts to FAM. The SBA guarantee, by which the SBA agreed to guarantee seventy-five percent of NCB's $500,000 loan, expressly stated, contrary to defendants' argument, that it did "not constitute a commitment by Lender [NCB] to make a loan to Borrower [FAM]" and that it "creates no third party rights or benefits to Borrower." (*Id.* at 7, Section I, Parts 5a(1)(a) and (b), respectively; underlining in original.)

 Defendants likewise failed to adequately support their claim of fraudulent inducement. They argued that NCB fraudulently induced them to enter into the loan agreements by misrepresenting orally that $400,000 would be available in the future as a line of credit, rather than $200,000 as stated in the loan documents. *Society National Bank v. NCON Corp., supra,* rejected this precise claim on summary judgment based on similar evidence. *Id.* at 6.

 It is well established that Ohio law does not allow a party to prove fraud by claiming that the inducement to enter into an agreement was a promise which is squarely contradicted by the written terms of that agreement. *E.g., Columbia Gas Transm. Corp. v. Ogle* (S.D.Ohio 1997), 51 F.Supp.2d 866, 873, citing, *inter alia, AmeriTrust Co. v. Murray* (1984), 20 Ohio App.3d 333, 334–335, 20 OBR 436, 437–439, 486 N.E.2d 180, 182–184, which affirmed the denial of Civ.R. 60(B) motion for relief from judgment on this basis.

 The record also does not contain sufficient operative facts to support defendants' arguments for invoking equitable estoppel. Their brief on appeal makes only passing reference to this argument in two sentences. App. R. 12(A)(2) permits appellate courts to disregard arguments that are not separately briefed or argued. *E.g., Fifth Third Bank of Northern Kentucky, Inc. v. Better Living T.V. & Appliance Rental, Inc., supra,* at 1, fn. 1. Even if we addressed the merits of the argument, we note that *Fifth Third Bank of Northern Kentucky* rejected this precise argument on similar facts. *Id.* at 3.

 Finally, the Badalamentis also failed to show that they were entitled to a hearing or relief on their claims that their signatures on the mortgage documents

were not properly acknowledged by the notary public. The record shows that the mortgage was valid and they do not argue that relief from the cognovit judgment against them was warranted even if any defect existed.

R.C. 5301.234 provides:

"(A) Any recorded mortgage is irrefutably presumed to be properly executed, regardless of any actual or alleged defect in witnessing or acknowledgment of the mortgage, unless one of the following applies:

"(1) the mortgagor, under oath, denies signing the mortgage.

"(2) the mortgagor is not available, but there is sworn evidence of fraud upon the mortgagor."

Neither of the Badalamentis denied under oath signing the mortgage and both were available to testify.

██ Even if the acknowledgment of their signatures were proven to defective, the mortgage would still have been effective between the parties. *Citizens Natl. Bank in Zanesville v. Denison* (1956), 165 Ohio St. 89, 59 O.O. 96, 133 N.E.2d 329. Finally, any alleged defect in the mortgage would not affect the cognovit note or judgment. *Schaub v. Welfare Fin. Corp.* (1939), 65 Ohio App. 68, 18 O.O. 295, 29 N.E.2d 223.

Accordingly, defendants' sole assignment of error is overruled.

*Judgment affirmed.*

KENNETH A. ROCCO and JAMES J. SWEENEY, JJ., concur.