THE STATE, EX REL. JONES ET AL., *v.* STOKES, JUDGE, ET AL.

(No. 56510—Decided June 1, 1989.

*David B. Dawson, Dean Della Volpe* and *Robert S. Catz,* for relator. *Jack G. Day,* for respondents.

*Journal Entry.* In their amended complaint in prohibition, relators aver that relator C. Lyonel Jones ("Jones") is the Director of the Legal Aid Society of Cleveland ("Legal Aid") and that relator Ramie Ann Reisman is an attorney licensed to practice law in the

state of Ohio who is employed in Legal Aid's Criminal Division and assigned to represent indigent persons in criminal proceedings in the Cleveland Municipal Court. (It is undisputed that Legal Aid and the city of Cleveland entered into an agreement in 1987 under which the city compensates Legal Aid in order to provide "for the defense of persons who have been determined to be indigent by the Cleveland Municipal Court.") Respondents Carl B. Stokes ("Stokes") and C. Ellen Connally ("Connally") are judges of the Cleveland Municipal Court.

A copy of a letter signed by Stokes and Connally and dated September 21, 1988 is attached to the amended complaint. Relators aver that the letter was delivered to Jones by a Cleveland Municipal Court bailiff. In the letter, Stokes and Connally described what they considered to have been "Reisman's transgression of the Code of Professional Responsibility, of local court rules and state law."

Enclosed with the letter was an "Individual Guard Report" from the Cleveland House of Corrections. In the report, the guard indicated that Donna Leisinger — a client of Reisman who is described in the letter as "a career prostitute" — was attempting to sell tickets to a fundraiser for Reisman's campaign for Clerk of the Cuyahoga County Court of Common Pleas. The guard also reported that Leisinger stated that, "on 8/25/88 while she was in court," Reisman had given her the ten tickets. A copy of one of the tickets accompanied the copy of the report. The price for the ticket was $25.

In addition to describing the incident involving the attempted sale of fundraiser tickets by Leisinger, the letter stated: "The judges of this court have been almost unanimous in complaints of Reisman's undesirable behaviour [sic] in their courtrooms." The letter concluded as follows:

"The combination of these obser-vations of Reisman, coupled with the recently publicized incident involving her unprofessional and unethical trans-action with an indigent client, leads us to the following request and order:

"As the administrator of the con-tract by which Reisman is employed to work in this court, we request that you dismiss her from being one of the lawyers providing service under the contract to indigents of this court.

"Further, pending such adminis-trative changes, we, the undersigned judges of this court, do individually order you, as Legal Aid Director, the Administrator of the contract pro-viding attorneys to this court, and as an officer of this court, to not assign Ramie Reisman to either of the court-rooms over which we preside."

On October 5, 1988, Reisman ap-peared before Stokes in order to repre-sent several clients. A transcript of the proceedings before Stokes is attached to the amended complaint. Stokes stated:

"I am advising you you are not go-ing to practice law here pursuant to the contract between the Legal Aid Society and the representation of in-digents in this Court, and apparently the deliberate contravention on your director, C. Lyonel Jones, and of which you are aware."

Stokes also said "show an order to issue to show cause why C. Lyonel Jones should not be held in contempt, process to issue," and set a hearing for two days later.

The transcript of the October 5, 1988 proceedings before Stokes is without case caption. The transcript concludes with Stokes saying, "First case."

Respondents have filed a motion to dismiss accompanied by various at-tachments. Relators have filed a mo-tion for summary judgment which is also supported by several exhibits.

In order to maintain an action in prohibition, relators must demonstrate

that all three of the necessary conditions exist:

"The conditions which must exist to support the issuance of a writ of prohibition are: (1) The court or officer against whom it is sought must be about to exercise judicial or quasi-judicial power; (2) the exercise of such power must be unauthorized by law; and (3) it must appear that the refusal of the writ would result in injury for which there is no other adequate remedy in the ordinary course of the law." *State, ex rel. McKee,* v. *Cooper* (1974), 40 Ohio St. 2d 65, 69 O.O. 2d 396, 320 N.E. 2d 286, paragraph one of the syllabus. See, also, *Bobb* v. *Marchant* (1984), 14 Ohio St. 3d 1, 3, 14 OBR 1, 2, 469 N.E. 2d 847, 849; *State, ex rel. Johnson,* v. *Perry County Court* (1986), 25 Ohio St. 3d 53, 58, 25 OBR 77, 81, 495 N.E. 2d 16, 21; *Tilford* v. *Crush* (1988), 39 Ohio St. 3d 174, 176, 529 N.E. 2d 1245, 1246; *State, ex rel. Tollis,* v. *Cuyahoga Cty. Court of Appeals* (1988), 40 Ohio St. 3d 145, 147, 532 N.E. 2d 727, 729.

Relators aver in their amended complaint that respondents "have no jurisdiction, power or authority whatever to issue orders denying relator Reisman the right to practice law in their courtrooms or interfering with relator Jones' operation of the Legal Aid Society of Cleveland." In both *Tilford, supra,* and *Tollis, supra,* the Supreme Court reaffirmed its earlier holding that " ' "if an inferior court is without jurisdiction whatsoever to act, the availability or adequacy of a remedy * * * to prevent the resulting injustice is immaterial to the exercise of supervisory jurisdiction by a superior court to prevent usurpation of jurisdiction by the inferior court." * * * [Citations omitted.]' " *Tollis, supra,* at 148, 532 N.E. 2d at 729, quoting *State, ex rel. Johnson,* v. *Perry County Court, op. cit.*

Respondents argue that relators have an adequate remedy at law. Of course, *Tilford, supra,* and *Tollis, supra,* indicate that it may not be necessary to reach the question of whether an adequate remedy at law exists. As a consequence, we will first examine whether respondents were without jurisdiction to issue the purported orders in the September 21, 1988 letter and during the October 5, 1988 hearing.

Respondents cite various authorities which stand for the proposition that a trial court has the inherent authority to regulate the conduct of and disqualify counsel appearing in specific proceedings before it. (*E.g.,* in *Royal Indemnity Co.* v. *J.C. Penney Co.* [1986], 27 Ohio St. 3d 31, 27 OBR 447, 501 N.E. 2d 617, the Supreme Court held that a trial court may revoke the *pro hac vice* admission of an attorney, which necessarily involves a specific proceeding.) The facts presented by this original action, however, indicate that the "orders" which are the subject of this controversy did not occur during particular proceedings. Rather, they were clearly intended to affect all proceedings before respondents and did not occur in any particular proceeding.

The September 21, 1988 letter by respondents articulates their judgment that Reisman had previously violated the Code of Professional Responsibility. As a consequence of this *prior* "transgression," respondents considered it necessary to impose a sanction on Reisman and attempted to compel the assistance of Jones in implementing that sanction.

Certainly, this broad sanction goes beyond disqualification or mere regulation of the conduct of counsel in a particular proceeding. Respondents have imposed a continuing restriction on Reisman's ability to practice law in their two courtrooms. This restriction differs only by degree from the sanctions imposed through the grievance procedures which are supervised by

the Supreme Court of Ohio. Yet, the Supreme Court's "jurisdiction over the discipline of attorneys * * * is exclusive and absolute." *Smith* v. *Kates* (1976), 46 Ohio St. 2d 263, 266, 75 O.O. 2d 318, 320, 348 N.E. 2d 320, 322. As a consequence, the conduct of respondents which gave rise to this action in prohibition is the type of usurpation of jurisdiction by an inferior court which necessitates relief in prohibition.

Relators' amended complaint does not, therefore, fail to state a claim upon which relief can be granted. The facts averred in the amended complaint describe a scenario in which respondents acted without jurisdiction. Respondents' motion to dismiss is, therefore, denied.

Similarly, there is no genuine issue as to any material fact. The contents of the September 21, 1988 letter and the transcript dated October 5, 1988 are not in dispute. The letter does not relate to any particular judicial proceeding. Likewise, the transcript dated October 5, 1988 does not purport to be part of any case. Indeed, the transcript concludes with Stokes saying, "First case." Inasmuch as respondents have not limited their attempts to control Reisman's conduct to individual proceedings, the letter and transcript set forth material facts which demonstrate that respondents acted without jurisdiction.

Accordingly, a writ of prohibition is allowed as follows: Respondents are prohibited from imposing any general limitation on the ability of Reisman to practice before them and from imposing any general limitation on the ability of Jones to assign Reisman to matters which will be heard in respondents' courtrooms. The relief otherwise requested by relators in their amended complaint is denied.

*Writ allowed.*

SWEENEY, P.J., J.V. CORRIGAN and NAHRA, JJ., concur.