RIFE, n.k.a. Ropp, Appellee,

v.

MORGAN, Appellant.

[Cite as *Rife v. Morgan* (1995), 106 Ohio App.3d 843.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 95 CA 19.

Decided Oct. 18, 1995.

844

*Stephen E. Schutte,* for appellee.

*Larry Morgan, pro se.*

*Kathleen Kerchansky,* guardian *ad litem.*

WOLFF, Judge.

Larry Morgan appeals *pro se* from a judgment of the Clark County Court of Common Pleas, Juvenile Division, entered December 19, 1994. In this judgment, the trial court reiterated its determination, previously reflected in its December 14, 1993 judgment, that Morgan's child should be placed in the legal custody of her maternal grandparents. Morgan appealed the December 14, 1993 judgment. *Rife v. Morgan* (Aug. 31, 1994), Clark App. No. 3121, unreported, 1994 WL 472143. In that appeal, Morgan advanced ten assignments of error, nine of which were overruled. This court did sustain Morgan's sixth assignment of error, and we reversed the judgment of December 14, 1993, and remanded the matter for the limited purpose of permitting Morgan to cross-examine the guardian *ad litem* and having the trial court reconsider the judgment in light of the additional testimony. The trial court conducted the evidentiary hearing required by our remand on November 22, 1994, and rendered its judgment on December 19, 1994, maintaining the legal custody of the child with her maternal grandparents.

In this appeal, Morgan again advances ten assignments of error, the first of which is as follows:

"1. A trial court is without jurisdiction and the trial judge is without authority to proceed with the case once an affidavit of disqualification has been filed."

After this matter was remanded to the trial court, it scheduled the required evidentiary hearing for October 24, 1994. On October 18, 1994, Morgan filed an affidavit of disqualification, seeking the disqualification of the trial court judge. Anticipating that the Chief Justice of the Ohio Supreme Court would not rule on the affidavit of disqualification prior to October 24, 1994, the trial court rescheduled the evidentiary hearing for November 22, 1994. On October 24, 1994, the Chief Justice denied the October 18 affidavit of disqualification. Also on October

24, 1994, Morgan filed another affidavit of disqualification which, according to the Supreme Court's entry of December 16, 1994, contained "grounds different from the October 18 filing." The trial court appears to have been unaware of the October 24, 1994 affidavit of disqualification in view of its statement on the record November 22, 1994, the date to which the evidentiary hearing had been rescheduled:

"Let the record show that Mr. Morgan has represented to the court today through his attorney, Mr. Ricketts, that on October 24th, 1994 he, in fact, filed another application with the Ohio Supreme Court of disqualification against me[;] [t]hat this court has just discussed the matter with the Supreme Court Clerk; that clerk indicates that the application, if it was filed on that date, was filed in the previous case that was ruled on on October the 24th and that Mr. Morgan has not filed a subsequent application.

"Therefore, the court will [go] ahead today and take the testimony of Ms. Kerchansky."

On December 16, 1994, the Chief Justice denied the October 24, 1994 affidavit of disqualification. The Supreme Court entry provides as follows:

"An affidavit of disqualification filed by defendant Larry Morgan on October 18, 1994 seeking the disqualification of Judge David D. Mattes was denied by entry dated October 24, 1994.

"Also on October 24, affiant filed another affidavit that was filed by the Clerk under the same case number as the October 18 affidavit, Supreme Court No. 94–AP–166. The October 24 affidavit contains grounds different from the October 18 filing and therefore will be separately considered.

"The allegations contained in the October 24 affidavit do not support a finding of bias or prejudice and therefore the affidavit is denied.

"This is the fifth affidavit filed by the same affiant to disqualify the same judge from the same case. Affiant is reminded of the statement contained in the October 24, 1994 entry that the filing of repeated affidavits of disqualification " 'could result in appropriate action being taken.' "

■ The issue raised by the first assignment of error is whether the trial court was without jurisdiction to proceed with the November 22, 1994 evidentiary hearing due to the pending affidavit of disqualification which had been filed October 24, 1994, and which had not been ruled upon by the Chief Justice of the Ohio Supreme Court as of the time that the evidentiary hearing was conducted.

Morgan cites *Cuyahoga Cty. Bd. of Mental Retardation v. Assn. of Cuyahoga Cty. Teachers of Trainable Retarded* (1975), 47 Ohio App.2d 28, 1 O.O.3d 168, 351 N.E.2d 777, for the proposition that the trial court lacked authority to proceed

with the evidentiary hearing and that the proceedings on November 22, 1994, and the resulting judgment, were therefore a nullity. The Court of Appeals for Cuyahoga County stated:

"[W]e hold that once the affidavit of prejudice was filed, the trial court was without authority to proceed to hear the case or to determine any matter affecting the substantial rights of the parties." *Id.* at 37, 1 O.O.3d at 173–174, 351 N.E.2d at 784.

Standing alone, that case appears to support the proposition that Morgan advances to this court. However, in *Cleveland v. White Properties, Inc.* (1985), 28 Ohio App.3d 37, 28 OBR 47, 501 N.E.2d 1231, the same Court of Appeals relaxed the apparent rigor of *Cuyahoga Cty. Bd. of Mental Retardation.* In *White Properties*, trial had been scheduled for July 2, 1984. On June 26, 1984, the attorney for White Properties filed an affidavit of disqualification against the trial judge. On July 2, 1984, trial was continued indefinitely. On July 27, 1984, the affidavit of disqualification was denied. On September 14, 1984, the trial court scheduled trial for November 5, 1984. On October 31, 1984, the attorney for White Properties filed a second affidavit of disqualification against the trial judge. Notwithstanding the pendency of the affidavit of disqualification, the trial court proceeded with the previously scheduled trial on November 5, 1984, and a verdict was rendered in favor of the city of Cleveland. On November 9, 1994, the second affidavit of disqualification was "denied consideration." On November 14, 1984, the jury verdict was reduced to judgment. On appeal, White Properties advanced essentially the same contention that Morgan advances in this case.

The court of appeals stated that the "well established" Ohio law was that "[o]nce a party files an affidavit [of disqualification], the trial judge does not have the power to proceed with the case until the Chief Justice of the Supreme Court has ruled on the affidavit," citing *Cuyahoga Cty. Bd. of Mental Retardation.* However, the court of appeals affirmed the action of the trial court because of the particular circumstances of the case, stating:

"[T]he unique fact pattern in the case *sub judice* warrants special consideration. In the case *sub judice,* appellant's attorney, on June 26, 1984, filed an affidavit of prejudice. Accordingly, after the filing of this first affidavit of prejudice, the trial court continued the case indefinitely. Thereafter, the Supreme Court found the affidavit to be meritless. Thus, the trial court again set the case for trial. Shortly before the next trial date, the same attorney again filed substantially the same affidavit of prejudice against the same judge in the same case when nothing had occurred in the case between the ruling on the first affidavit and the filing of the second affidavit except the setting of a new trial date.

"* * *

"[T]his court holds: Where an attorney files a second affidavit of prejudice which is substantially the same as the first, against the *same* judge in the *same* case after the Supreme Court has denied the first affidavit and there has been no change in the status of the case from the time of the ruling on the first affidavit to the time of the filing of the second affidavit, except for the setting of a new trial date, the trial court has the power to proceed to trial prior to receiving the Supreme Court's ruling on the second affidavit. To hold otherwise under this specific fact situation would encourage attorneys to utilize affidavits of prejudice as a tactic to delay trial. The Rules of Civil Procedure were promulgated to promote the efficient goals of justice and should not be corrupted to suit the purposes of attorneys to defeat these goals for their own convenience." (Emphasis *sic*.) *Id.*, 28 Ohio App.3d at 38–39, 28 OBR at 48–49, 501 N.E.2d at 1233.

As did the court of appeals in *White Properties*, we believe that the circumstances of this case warrant our affirming the action of the trial court in proceeding with the evidentiary hearing on November 22, 1994, notwithstanding the pendency of an affidavit of disqualification. We cannot say on the record before us, as could the court of appeals in *White Properties*, that Morgan's October 24, 1994 affidavit of disqualification was "substantially the same" as his October 18, 1994 affidavit of disqualification because the Supreme Court's entry, *supra*, stated that the grounds for the October 24 affidavit were different from the grounds for the October 18 affidavit. We can and do, however, take note of the Chief Justice's observation that the October 24, 1994 affidavit was Morgan's fifth affidavit to disqualify the same judge in the same case and of his reminder to Morgan that the filing of repeated affidavits "could result in appropriate action being taken." The logical inference to be drawn is that the Chief Justice had found all of Morgan's affidavits to be wanting in substance, if not outright frivolous.

R.C. 2701.03, which provides for the filing of an affidavit of disqualification with the Supreme Court to remove a trial judge from a case, is silent as to whether the mere filing of the affidavit divests the trial court of jurisdiction to proceed until such time as the Chief Justice passes upon the affidavit of disqualification. Case law has long provided that notwithstanding the pendency of an affidavit of disqualification, the trial court is not divested of authority to act in a ministerial capacity. See *Evans v. Dayton Newspapers, Inc.* (1989), 57 Ohio App.3d 57, 58, 566 N.E.2d 704, 705. While a distinction can be drawn between substantive and ministerial matters, it presents some conceptual difficulty to say that the pendency of an affidavit of disqualification divests a trial court of power to act upon substantive matters, but does not divest the court of power to act upon ministerial matters.

■ Taking into account the ease with which a disgruntled litigant may file an affidavit of disqualification with the Supreme Court, we believe the appropriate approach is to posit that a trial judge who proceeds with substantive matters pending resolution by the Chief Justice of an affidavit of disqualification does so at the risk of those proceedings being held for naught should the Chief Justice find the affidavit of disqualification to be meritorious. We believe that the prudent trial judge would delay the proceedings until the Chief Justice rules on the affidavit, as the trial judge did here as to the October 18 affidavit, if the trial judge thinks the affidavit of disqualification may have arguable merit. Likewise, prudent counsel for parties not filing affidavits of disqualification would no doubt urge the trial court not to proceed until the Chief Justice rules if they think the affidavit of disqualification may have arguable merit. On the other hand, adopting this approach prevents disgruntled litigants from handcuffing trial courts with last-minute filings of probably frivolous affidavits of disqualification.

■ Because we hold that the pendency of an affidavit of disqualification does not automatically divest the trial court of power to act, even upon substantive matters, and because the Chief Justice eventually denied the affidavit of disqualification that was pending on the date of the evidentiary hearing, the first assignment of error is overruled.

"2. Appellant was denied a fair trial by the trial court by being impartial [*sic*, partial] and denied appellant his due process of law."

■ Morgan contends that the trial court has not ruled on a number of motions filed in these proceedings since the juvenile court first awarded custody to the child's maternal grandparents. It must be remembered that this matter was remanded to the trial court only for the purpose of (1) Morgan's cross-examining the guardian *ad litem*, which purpose was accomplished on November 22, 1994, and (2) the trial court's reconsidering its judgment in light of the cross-examination testimony. In its decision and judgment of December 19, 1994, the trial court recognized that it had yet to rule on a motion to allow newly discovered evidence and a motion for a finding of contempt against the child's maternal grandmother. In view of the trial court's recognition that it had yet to rule upon these motions, Morgan cannot be said to have been prejudiced merely by the trial court's not having ruled as of December 19, 1994. The trial court also appears to have implicitly overruled Morgan's motion to remove the guardian *ad litem* for the child. Morgan does not explain how he has been prejudiced by this ruling, and we discern no prejudice. Morgan also contends that four *pro se* motions for findings of contempt against Cathy Coss of Clark County Children's Services, Emerson School, and the Clark County Children's Home have not been ruled upon. These motions do not implicate the limited purpose of the remand to the trial court, Morgan does not suggest how he has been prejudiced by the trial

court's failing to rule on these motions, and there is no reason to conclude that the trial court will not eventually rule on these motions. For all of these reasons, Morgan has failed to demonstrate prejudice, and the second assignment of error is overruled.

"3. The trial court denied appellant a fair trial and equal protection of due process of law by withholding vital key evidence of an [*sic* ] record."

 Morgan contends in this assignment of error that the trial court denied him a record of its discussions with the minor child. This request was made in a "notice" filed January 5, 1994. It would appear that the record of the trial court's *in camera* discussion with the minor child was germane to the appeal from the trial court's judgment of December 14, 1993. Any problems with securing the record of those proceedings should have been addressed during the pendency of that appeal.

The third assignment of error is overruled.

"4. Appellant was denied a fair and equal trial guaranteed by the Fourteenth Amendment to the United States Constitution of due process by being denied the right to proceed *pro se.*"

 On November 12, 1993, Morgan filed a "notice" in the juvenile court indicating his "notice of his right to invoke his Constitutional right to represent himself *pro se* as co-counsel." On January 10, 1995, the trial court entered a "response to affidavit of bias and prejudice for disqualification of Judge David D. Mattes" in which the trial court stated, presumably to the Supreme Court of Ohio, as follows:

"I am in receipt of your letter of December 29, 1993 and a copy of Mr. Morgan's Affidavit of Bias and Prejudice.

"In answer to his Affidavit, I recall that Mr. Morgan apparently came to the window at the sign-in-counter in the lobby of the Juvenile Court to file some papers on his own behalf in an on-going case. The person at the window telephoned the Deputy Clerk who is in charge of filings in paternity cases. She informed me of Mr. Morgan's request. As Clerk of the Juvenile Court, I went to the lobby to inspect the papers Mr. Morgan wanted to file.

"In view of the status of the case [on appeal] and Mr. Morgan's continued requests for pro se filings, even though he is represented by counsel, I have tried to inspect all papers that he has filed in his own behalf to assure their legality. Also, Mr. Morgan has been instructed by me in open Court in the presence of his attorney, to file papers only through the office of his attorney. He continues to ignore my instruction and his counsel has little control over him."

It is clear from the record that throughout the proceedings resulting in the judgment currently on appeal, Morgan has been represented by counsel. It is also clear that the trial court has recognized an obligation to rule on all motions that were filed by his counsel. Furthermore, Morgan has not indicated, and it is not apparent to us, how he has been prejudiced by the failure of the court to rule on several of his *pro se* motions. Certainly it is not apparent to us that any of them implicate the narrow purpose for which this matter was remanded to the trial court. The trial court has not indicated that it refuses to act upon the motions.

The fourth assignment of error is overruled.

"5. Appellant was denied a fair trial due to abuse of discretion and denied due process of law by the trial court allowing withdrawn counsel to participate."

■ In this assignment of error, Morgan complains that court-appointed counsel for the child's mother was permitted to participate in the evidentiary hearing on November 22, 1994, notwithstanding that the mother, who was in prison, was herself no longer seeking custody of the child. The mother apparently agreed that custody should be with the maternal grandparents. Regardless of whether it was appropriate to allow the mother's counsel to participate in the evidentiary hearing, it is clear from the record that the mother's counsel's participation was minimal at best, and Morgan has failed to indicate how that counsel's limited participation was prejudicial to him.

The fifth assignment of error is overruled.

"6. The trial court unreasonable quash [*sic*] the subpoena's [*sic*] for the chief-in-witness [*sic*] which constitutes an abuse of discretion and deniel [*sic*] of fair trial guarantees secured by the Sixth and Fourteenth Amendments to the United States Constitution and by Article [I], Section 10 of the Ohio Constitution."

■ Morgan's grievance under this assignment of error is the trial court's refusal to permit the child to be cross-examined. Our remand was limited to requiring the trial court to permit Morgan to cross-examine the guardian *ad litem* because it was clear that the trial court's determination to award custody to the maternal grandparents was based, in part, upon the report of the guardian *ad litem*. The trial court complied with the mandate on remand, which did not extend to examination of the child. The sixth assignment of error is overruled.

"7. The trial court denied appellant due process of the Fourteenth Amendment to the United States Constitution and by Article [I], Section 10 of the Ohio Constitution by dening [*sic*] appellant his right to defend a motion and constitutes an abuse of discretion [*sic* ]."

■ In this assignment of error, Morgan complains that the trial court, upon motion of the guardian *ad litem*, appointed counsel for the guardian *ad litem* without affording him the opportunity to be heard on the motion. He also contends that it was an abuse of discretion to appoint counsel for the guardian *ad litem* because she was neither a party nor indigent. In our judgment, the trial court neither acted unlawfully nor abused its discretion in appointing counsel for the guardian *ad litem*, who was to be subject to cross-examination pursuant to the terms of our remand, or in the manner in which it made the appointment.

The seventh assignment of error is overruled.

"8. The trial court abused its discretion and denied appellant due process and equal protection under the Fourteenth Amendment to the United States Constitution and Article [I], Section 10 of the Ohio Constitution."

■ In this assignment of error, Morgan complains that the trial court failed to discharge the guardian *ad litem* after it had determined to maintain legal custody with the maternal grandparents by order of December 19, 1994. R.C. 2151.281(G)(3) provides that "[t]he guardian ad litem * * * shall continue to serve until * * * [t]he legal custody of the child is granted to a relative of the child or to another person." The record is silent as to whether the trial court discharged the guardian *ad litem* after determining to maintain custody with the maternal parents. Assuming that the trial court had a responsibility to do so which it had not carried out, it is certainly not of justiciable concern to Morgan.

The eighth assignment of error is overruled.

"9. The trial court's unconscionable handling of the trial and related proceedings, the unreasonable restrictions placed on appellant's counsel in defending the case, and the commentary of the trial court toward appellant's counsel and appellant's witnesses, combined with the trial court's actions and decisions discussed in the foregoing assignments of error, cumulate to so irreparably infect the integrity of the fact-finding process as to be not merely abuses of discretion but to completely deprive appellant of a fair trial and due process of law as secured by the Fifth and Fourteenth Amendments to the United States Constitution and by Article [I], Section 10 of the Ohio Constitution."

■ Morgan makes a number of assertions under this assignment of error. He first claims that the home study report and the report of Dr. Gibeau "contain no unfitness to be deprived of obtaining custody of said child [*sic*]." In our judgment, this is not an issue for this appeal. The remand was for the limited purpose of providing Morgan with an opportunity to cross-examine the guardian *ad litem* and requiring the trial court to reconsider its judgment in light of this further testimony. The home study report and the report of Dr. Gibeau were apparently before the trial court in connection with the original decision awarding

custody to the maternal grandparents on December 14, 1993. Any contentions as to these reports should have been raised in the earlier appeal.

Morgan also claims that the trial court based its decision on a July 22, 1993 incident report from the Mercy Medical Center, and that the guardian *ad litem*'s report relied upon this incident. The statement Morgan attributes to the trial judge in support of this contention is allegedly contained in a transcript that Morgan states in his appellate brief was filed March 29, 1994. If this is so, any impropriety on the part of the trial court should have been addressed by Morgan to this court in the earlier appeal. Insofar as the guardian *ad litem*'s report relied on this incident report, suffice it to say that on remand the guardian *ad litem* was cross-examined extensively by counsel for Morgan about the July 22, 1993 incident.

Morgan also points out that during cross-examination, the guardian *ad litem* was unable to provide the name of an emergency room physician who told her that the child was dehydrated, or to produce a report of a diagnosis that the child was dehydrated. Presumably, Morgan contends that this inability to name the doctor or produce his report, if any, undermines the credibility of the contents of the guardian *ad litem* report as it pertains to this incident and in general. The effect of this lack of information upon the validity of the report was for the trial court to determine, and we find no abuse of discretion in the trial court's according this lack of information little, if any, significance.

Finally, Morgan generally contends that the judgment awarding custody of the child to her maternal grandparents, and the termination of his custody, was contrary to law. Based on the record on this appeal, we can find no reason to conclude that the judgment was either against the weight of the evidence or contrary to law. Accordingly, the ninth assignment of error is overruled.

"10. The trial court's unreasonable preclusion of appellant file [*sic*] and denied a fair trial and equal protection secured by the Fourteenth Amendment to the United States Constitution."

In this assignment of error, Morgan criticizes the trial court for not obtaining the complete record of prior proceedings to resolve an evidentiary question that arose on cross-examination. Morgan's attorney was cross-examining the guardian *ad litem* with a document which he believed was the November 1, 1993 guardian *ad litem* report which had been previously filed in the juvenile court. An objection to the use of the document was made by counsel for the maternal grandparents who objected in order to be sure that the document being used for cross-examination was the same as the guardian *ad litem* report filed with the court on November 1, 1993. The trial court stated that the November 1, 1993 report was not immediately available because it was contained in a file that

was not then in the trial judge's actual physical possession. However, Morgan's attorney represented to the court that the document from which he was cross-examining was file-dated November 1, 1993, and the trial court then overruled the objection that had been interposed. The trial court was apparently satisfied that Morgan's counsel was using a copy of the same report as had been previously filed. Morgan was certainly not prejudiced by his counsel's being allowed to use the document that he wanted to use in cross-examining the guardian *ad litem*. Morgan suggests that the trial judge was required to verify the authenticity of the document utilized by his counsel by referring to the original record. Be that as it may, Morgan's counsel convinced the trial judge that he had the appropriate document, and the trial court overruled the objection that was directed to its use.

The tenth assignment of error is overruled.

The judgment will be affirmed.

*Judgment affirmed.*

GRADY and FREDERICK N. YOUNG, JJ., concur.