## In re KARASEK.

[Cite as *In re Karasek* (1997), 119 Ohio App.3d 615.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15891.

Decided May 23, 1997.

*Jo Blackburn Karasek, pro se.*

*John A. Jackson, pro se.*

FAIN, Judge.

Jo Blackburn Karasek, counsel for John Allen Jackson, appeals from a judgment holding her in criminal contempt of court. The contempt proceedings against Karasek stem from her conduct during her representation of Jackson before the Montgomery County Court of Common Pleas, Domestic Relations

Division. In contesting the conviction, Karasek contends that the trial court erred by striking, and by refusing to allow the filing of, certain documents claimed by her to have been filed or tendered for filing on behalf of her client. She also claims that the trial court was prejudiced and biased toward her and, therefore, erred by presiding over the contempt hearing. She further contends that the trial court did not provide her with adequate notice of the contempt hearing and thus denied her the right to representation and to present witnesses on her behalf. Additionally, Karasek claims that the trial court erred by failing to grant her motions for a new trial and for relief from the judgment of contempt, pursuant to Civ. R. 59(A) and 60(B), respectively. Finally, she contends that the trial court erred by entering an order requiring her to employ co-counsel in any future cases tried before the court.

We conclude that the trial court did not err to Karasek's prejudice by striking or by refusing to file certain documents, because the documents in question were not material to the contempt proceedings. Further, we conclude that the trial judge did not err by presiding over the contempt proceedings, because there is no evidence that he was prejudiced or biased against Karasek. We find that Karasek was given adequate notice of the contempt hearing. We also find that the trial court correctly denied Karasek's Civ. R. 59(A) and 60(B) motions for new trial and relief from judgment, respectively. Finally, we conclude that the trial judge did err by prohibiting Karasek from practicing in his courtroom without co-counsel.

I

Karasek was hired by John Allen Jackson to represent him in his divorce action pending before the Montgomery Court of Common Pleas, Domestic Relations Division. In making an interim award of attorney fees and legal expenses, the trial court entered the following order on November 1, 1995:

"Both parties are hereby ordered to file with the court and provide to the other party by November 10, 1995 a detailed written disclosure statement of all attorney fees and legal expenditures incurred by each party in the litigation of this case to date, including itemized fee statements, hourly rates paid, itemized hours expended, itemized fee deposits, and balances due."

At a hearing held December 7, 1995, the trial court reminded Karasek that her fee disclosure was overdue. Karasek informed the trial court that she was not going to file the disclosure unless opposing counsel was also required to make the same disclosure. The trial court informed Karasek that opposing counsel had already filed his disclosure. At that point, the following colloquy took place:

"MS. KARASEK: That doesn't say how much he's paid [counsel].

"THE COURT: If you have any quarrel with his, you file something to force him to disclose it, but that doesn't relieve your obligation. I expect to see it Monday.

"MS. KARASEK: If you require me, I'm not going to do it unless he does.

"THE COURT: Don't tell me. I'll have you brought before the Court, if necessary. I expect to see it by the end of the day Monday. He has filed his. You file yours.

"MS. KARASEK: I'll file just as he has filed.

"THE COURT: You file what the Court ordered you to file, or I'll have you brought before the Court. Do you understand me?

"MS. KARASEK: I'm not concerned.

"THE COURT: Do you understand me?

"MS. KARASEK: You can't order something of me you don't order of him.

"THE COURT: I have ordered you both to comply. You have failed to comply.

"MS. KARASEK: He hasn't either.

"THE COURT: You're on notice. Monday, 4:00 o'clock."

On December 11, 1995, Karasek filed her disclosure, which contained a list of actions taken on the case, as well as expenses incurred. It also stated that Karasek was not charging her client by the hour, and that her hours were not generally kept; however, it failed to set forth any details of the fee arrangement. The disclosure also stated that it was not a complete list of all activity. On December 14, 1995, Karasek filed a posttrial statement in which she stated that she had omitted an expense item on her disclosure. On December 21, 1995, the trial court entered an order to show cause why Karasek should not be held in contempt of court for failing to comply with the trial court's order. The trial court stated that it issued the show-cause order because Karasek's disclosure failed to set forth hours expended, amount billed, or amount due. The order required Karasek to appear before the court on December 27, 1995, but waived her appearance if the statement was filed prior thereto.

According to the record, Karasek did not appear before the trial court for the December 27 show-cause hearing; neither did she file an amended disclosure statement or a motion for a continuance. Instead, on December 28, 1995, she filed a response to the order to show cause, stating that she would not be present for the hearing. The response contained the following assertions: (1) that Karasek had never been held in contempt before any court, (2) that the show-cause order intruded on the Christmas holiday, (3) that she had less than a

week's notice of the hearing, and only two business days to prepare a response, (4) that the charge of contempt was unfounded, (5) that although Karasek was "utterly inexperienced in personally defending against contempt charges, and has had insufficient time to research this, she is not sure, but she has a recollection that she is entitled to a different judge to hear this matter, and does hereby assert that right," (6) that Karasek did not have sufficient time to conduct research, but that she "believes" that she is entitled to at least a week plus three days to respond to the charge, (7) that she had filed an affidavit of bias and prejudice against the trial judge on December 22 [1] and, therefore, the trial court had no authority to hear the contempt case until after the Ohio Supreme Court had ruled on the affidavit, and (8) that Karasek was scheduled to have surgery for cancer the day after the matter was scheduled to be heard.

The trial court, on January 5, 1996, issued an arrest warrant for Karasek requiring her to appear before the trial court to answer for her failure to appear. Karasek was subsequently arrested on January 22, 1996. She was released on her own recognizance, provided that she appear before the trial court on January 31, 1996. On February 2, 1996, the trial court entered orders rescheduling the show-cause hearing for February 9, 1996, and additionally requiring Karasek to show cause why she should not be dismissed as counsel for Jackson.

The show-cause hearing was held on February 9, at which time Karasek appeared with her client. Karasek entered an objection claiming that her counsel was unable to be present, and she stated that she had filed a motion for a continuance. The trial court overruled the motion for continuance, and proceeded with the hearing. In regard to the fee disclosure, Jackson testified that Karasek charged him $50 per hour for representation, and that he had paid her $900. He also testified that at some point, Karasek decided that she was not

---

1. Acting pursuant to R.C. 2701.03, Jackson executed two affidavits of bias and prejudice against the trial court, which were filed with the Ohio Supreme Court. The first one (and its supplemental affidavit) was filed with the Supreme Court in October 1995, while the second one was filed with the Supreme Court on December 22, 1995. Both were denied by Chief Justice Moyer in orders dated November 30, 1995 and December 29, 1995. Chief Justice Moyer stated that there was no evidence to support the affidavits. It was also noted that both affidavits contained similar complaints. In denying the affidavits, the Chief Justice stated that "the essence of [Jackson's] complaint is his dissatisfaction with [the trial judge's] rulings of law. Dissatisfaction or disagreement with a judge's rulings of law are legal issues subject to appeal, and such rulings are not by themselves evidence of bias or prejudice supporting the judge's disqualification." In overruling the second affidavit, Chief Justice Moyer indicated that any further filings might be considered frivolous and result in sanctions.

On January 9, 1996, Karasek signed and filed an affidavit of bias and prejudice against the trial court on behalf of Jackson. It too was denied by the Chief Justice, on January 30, 1996, on the grounds that it contained the same issues as the previous affidavits. Although the record contains a reference to a later affidavit filed by Karasek that was apparently voluntarily withdrawn, the record does not disclose the substance of that affidavit.

going to charge him any further fees "except for filing fees, and things of that nature, and expenses on her behalf." When she was questioned regarding her failure to appear at the original show-cause hearing, Karasek responded as follows:

"I did not appear on December 27, one, because I knew I did not have to appear, because there was an Affidavit of Bias and Prejudice against you. Two, I had surgery the next day, cancer surgery. I was concerned about it.

"And every time I have been in front of you, you harangued me on something. I knew it was important going into surgery and anesthesia, I needed to be at peace, and I wouldn't make it at a day's time.

"I had little notice. I didn't have time to study the record to figure out what you wanted. I still haven't figured out what you wanted. I submitted a Motion to Make Definite and Certain on January 17, which you have refused to file, and you have refused to answer; so, I still don't know what you want."

When asked what good cause she had for being allowed to continue to represent Jackson, Karasek replied, "I'm not interested in representing anyone else in your Court ever again. I'm only interested in representing John Jackson because he's unable to obtain other counsel." Karasek further stated that neither the trial court nor opposing counsel had treated her respectfully, and that Mrs. Jackson had not given truthful testimony.

The trial court filed a sentencing entry finding Karasek in contempt of court. The entry sentenced Karasek to one day in jail, with credit for one day served, for the failure to appear. The trial court sentenced her to three days in jail for the failure to file a fee disclosure statement, but suspended the sentence because her client appeared and testified to the fee arrangement. The trial court also discharged her as Jackson's attorney. Finally, the trial judge ruled that Karasek could not appear in his court, pending further orders, without the aid of co-counsel.

On February 16, 1997, counsel for Karasek filed a pleading styled "Motion for new trial and to vacate all orders regarding matters pertaining to allegations of contempt against Jo Karasek (Rules 59 & 60 O.R.C.P.)." The trial court overruled the motion, stating that it failed to "discuss, analyze, or even hint at any legal or factual grounds" for relief under Civ. R. 59 or 60.

Karasek appeals from the judgment of contempt rendered against her, as well as from the denial of her motion for relief under Civ. R. 59 and 60.

## II

Karasek's first and second assignments of error are as follows:

"The trial court prejudicially erred in denying Jo Karasek's motion for new trial and to vacate all orders regarding matters pertaining to allegations of contempt against Jo Karasek because there were irregularity in the proceedings of the court, irregularity in the orders of the court and abuse of discretion that prevented defendant from having a fair trial, as set forth in Ohio Civil Rule 59(A)(1).

"The trial court prejudicially erred in ordering on December 20, 1996, that defendant could not file the subsequent documents: * * *"[2]

Karasek contends that the trial court struck from the record six documents which she had filed on behalf of her client. She also contends that the trial court entered an order, dated December 20, 1996, providing that she was not allowed to file fifteen other documents tendered on behalf of her client. Karasek claims that the trial court's orders regarding the documents prevented her from having a fair trial. She also contends that the orders prevent this court from adequately reviewing her claim that "the statements of the trial court about [her] were incorrect and/or reflect a prejudice that interfered with a fair trial and hearing on appeal." She further contends that preventing the filing of documents constitutes prior censorship and prejudicially interferes with her right of free speech. Finally, she contends that the trial court's orders have denied her her right of representation, the right to present evidence on her behalf, the right of free speech, and due process of law. She cites no case law in support of her argument.

We first note that Karasek fails to refer this court to any reference in the record to support her claim that the trial court entered any order striking any documents from the record. Further, our review of the record does not reveal any order by the trial court dated December 26, 1996 (a date that is approximately six months later than the date this appeal was filed), denying her the right to file documents. We have also searched the record for an order dated December 26, 1995, but have been unable to find one. Further, Karasek has failed to supply this court with copies of the documents that she claims were stricken from the record, or that she claims were not allowed to be filed. Nor did she attempt to modify or to correct the record pursuant to App. R. 9.

We have reviewed the record, and have, in fact, found orders striking six documents as Karasek claims. However, one of those documents is contained in the record before us. Further, in those orders, the trial court stated that the pleadings filed were either redundant, immaterial, or impertinent. We also found an order prohibiting Karasek from filing documents "without the prior written

---

2. Karasek's assignment of error lists fifteen documents that she claims the trial court prevented her from filing.

authorization" of the trial judge. However, we note that eight of the documents that Karasek claims she was not allowed to file are contained within the record transmitted to this court.

█ We have reviewed the documents that are in fact contained within the record, and conclude that they do not support Karasek's claim that she was prejudiced at trial. Nor do they evidence any bias or prejudice on the part of the trial judge. Further, we conclude that even had these documents been excluded from the record, they would have had no bearing on Karasek's constitutional rights, because they all relate solely to issues regarding the Jackson divorce. Likewise, we cannot say that the exclusion of the remaining documents had any effect on Karasek's conviction for contempt. Again, based upon the document title captions listed by Karasek, we conclude that these documents would not have had a bearing on the contempt charges, because they all appear to relate solely to issues involved directly in the Jackson divorce.

In sum, in these assignments of error, Karasek merely makes conclusory remarks regarding the impact of these documents upon her case, but fails to show any actual prejudice. Accordingly, Karasek's first and second assignments of error are overruled.

### III

Karasek's third assignment of error is as follows:

"The trial court denied attorney Jo Karasek a fair trial in presiding over the case in view of his inability to impartially judge her case."

Karasek contends that the trial judge was under "a clear and mandatory duty to disqualify himself from hearing [the] case." In support, she cites Canon 3(E)(1) of the Code of Judicial Conduct. She also claims that the trial court had "the formation of a fixed anticipatory judgment," and had exhibited a "hostile feeling or spirit of ill will" toward her. She further contends that the trial court's failure to disqualify himself from presiding over the contempt proceedings was prejudicial, and resulted in a void judgment.

The Ohio Supreme Court has said that "the appointment of another judge to hear the evidence is warranted where the alleged contempt takes the form of personal insult or vilification of the judge, so that there would exist the possibility of bias should the victim of such abuse pass judgment on the evidence." *State v. Weiner* (1974), 37 Ohio St.2d 11, 13, 66 O.O.2d 6, 7, 305 N.E.2d 794, 796. However, the Supreme Court held that disqualification was unnecessary in light of the absence of a claimed personal attack upon the judge in that case. *Id.* In this case, the contempt proceedings were not the result of personal attacks upon

the trial court, but were instead founded upon Karasek's apparent failure to have complied with court orders.

Canon 3(E)(1)(a) of the Code of Judicial Conduct provides:

"A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

"(a) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding."

Karasek refers this court to numerous orders in the record that she contends evidence the judge's bias and prejudice against her, and that necessitate disqualification pursuant to Canon 3(E).

■ Our review of the record, as well as the allegations contained within Karasek's appellate brief, leads us to conclude that the trial judge did not exhibit bias or prejudice and, thus, was not required to disqualify himself. The orders, as well as the remarks, made by the trial court merely set forth the basis for the court's decisions. Furthermore, in light of our conclusion that the findings of contempt are supported by the evidence, and the fact that the sanction imposed was not disproportionate to the offense, we cannot say that the trial court exhibited any bias or prejudice. Instead, in light of Karasek's conduct, we find that the trial court exercised commendable restraint in imposing a light sentence and suspending the jail term.

Accordingly, Karasek's third assignment of error is overruled.

## IV

Karasek's fourth assignment of error is as follows:

"The trial court prejudicially erred in finding Jo Karasek in contempt for failure to file."

Karasek claims that the trial court erred by finding her in contempt for failure to file a fee disclosure. This argument is tripartite. First, she contends that the trial court gave her "inadequate notice of what it was the trial court claimed she did not file." Second, she claims that the trial court did not give her adequate notice of the December 27, 1995 contempt hearing, and thus denied her the "effective right to counsel and or self-representation," as well as the right to present witnesses on her behalf. Finally, she contends that the trial court found her in contempt without a hearing.

■ We find Karasek's claim that she did "not know what it was that the Court said she did not file" to be disingenuous. The trial court's order regarding the fee disclosure explicitly detailed the information to be set forth therein. Further, the transcript from the December 27, 1995 hearing shows that the trial court specifically informed Karasek that she was required to comply with the order or that she would have to appear before the court to show-cause for failing to do so. Additionally, the show-cause order setting the contempt hearing specifically stated that Karasek had failed to comply with the disclosure order, and specifically set forth the items that had been omitted from her disclosure. Karasek has not claimed that she was unaware of the contents or requirements of any of these orders. Therefore, we cannot conclude that the trial court failed to give Karasek adequate notice of the required filing.

■ Likewise, we find Karasek's claim that she was not given adequate notice of the contempt hearing to be without merit. Karasek argues that she did not have adequate notice of the originally scheduled hearing date, December 27, 1995, because she was only given two days' notice. The record shows that the original order to show cause was entered on December 21, 1995, and the hearing was scheduled for December 27, 1995. In her response and objection to the show-cause order, Karasek stated that she "had, at most, two business days to prepare a response." We do not find this argument compelling.

First, while she claims that she only had two business days to prepare, this is misleading. Because December 23, 24 and 25, 1995, constituted Christmas Day and the weekend preceding Christmas, it may be technically accurate to say that Karasek only had two intervening business days, December 22 and 26, during which to prepare a response. Nevertheless, the weekend and Christmas Day did intervene. While it may be inconvenient and even disheartening to have to concern oneself with legal controversies over the holiday season, the author can remember that this was not an uncommon hazard of practicing law. Second, Karasek could have filed a motion for a continuance had she concluded that she needed more time to prepare. Third, Karasek was aware of the scheduled hearing date, yet she purposely chose not to appear, even if only to inform the court that she had not been able to prepare an adequate defense in the limited time available to her. Fourth, the hearing was not actually held until February 9, 1996, thereby affording her ample time in which to secure representation and witnesses. Fifth, while she claims that her attorney was not able to be present at the February 9, 1996 hearing, we note that no one had entered an appearance as her counsel prior to that date. In fact, no one entered an appearance as counsel for Karasek until after the sentencing entry was filed.

Finally, Karasek's argument that the trial court found her in contempt without a hearing is unfounded. It appears that Karasek is claiming that the trial court

found her in contempt "in absentia" during the December 27, 1995 hearing. In support, she contends that the fact that she was absolved of any penalty, but not of the contempt, itself, at the February 9, 1996 hearing indicates that the trial court had previously found her guilty of contempt. However, the record does not support her claim that the trial court conducted any type of hearing on December 27, or that it made a finding of contempt on that date. Instead, the record shows that the trial court conducted a hearing on February 9, 1996, regarding both the failure to file, as well as the failure to appear. Karasek was present at the February hearing, and her client was present as a witness. She does not claim that she was denied the opportunity to present a defense or to present witnesses at the February hearing. There is no support in the record for her contention that she was held in contempt without benefit of a hearing.

Karasek's fourth assignment of error is overruled.

## V

Karasek's fifth assignment of error is as follows:

"The trial court prejudicially erred in denying said motion for new trial because the judgments are not sustained by the weight of the evidence, as set forth in Ohio Civil Rule 59(A)(6)."

Karasek contends that the judgments of contempt are against the manifest weight of the evidence. In order to assess a claim that an adjudication of criminal contempt is against the weight of the evidence, an appellate court must determine whether the finding is supported by proof beyond a reasonable doubt. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 18 O.O.3d 446, 416 N.E.2d 610. Additionally, intent to defy the trial court is an essential element of indirect criminal contempt. *In re Carroll* (1985), 28 Ohio App.3d 6, 10, 28 OBR 15, 18–19, 501 N.E.2d 1204, 1209. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, paragraph one of the syllabus.

A trial court's power to punish contempt "is inherent and necessary to the exercise of judicial functions." *Hale v. State* (1896), 55 Ohio St. 210, 45 N.E. 199, paragraph one of the syllabus; *Zakany v. Zakany* (1984), 9 Ohio St.3d 192, 9 OBR 505, 459 N.E.2d 870. It "has been uniformly held to be necessary to the protection of the court from insults and oppression while in the ordinary course of its duties, and to enable it to enforce its judgments and orders necessary to the due administration of law and the protection of the rights of suitors." *In re Davis* (1991), 77 Ohio App.3d 257, 262–263, 602 N.E.2d 270, 274. Punishment for

criminal contempt is intended to vindicate the authority of the court by punishing the contemnor for a completed act of disobedience. *Brown, supra,* 64 Ohio St.2d at 254, 18 O.O.3d at 449, 416 N.E.2d at 613.

█ The record before us contains evidence upon which the trial court could reasonably rely in finding that Karasek intentionally acted in direct contravention of its orders. Her failure to appear on December 27, 1995, was without good cause or legal basis, and thus evidenced a complete lack of regard for the authority of the court. The intent to defy the trial court's order to show cause can be found in her response and objection to the order, wherein she informed the trial court, albeit a day late, that she did not intend to appear. Moreover, the insouciant manner in which Karasek informed the trial court that she did not intend to comply with the order to file a fee disclosure, along with her subsequent failure to file in compliance with the order, or even to amend the deficient disclosure, indicates to this court that the finding of contempt for failure to file is amply supported by the record. As an attorney, Karasek is an officer of the court, and is held to a high standard. The record shows that she failed to meet that standard.

Karasek's fifth assignment of error is overruled.

## VI

Karasek's sixth assignment of error is as follows:

"The trial court prejudicially erred in denying said motion because said judgment is contrary to law, as set forth in Ohio Civil Rule 59(A)(7)."

Karasek claims that she is entitled to a new trial pursuant to Civ. R. 59(A)(7), which provides that a new trial may be granted if the judgment is contrary to law. Her argument that the judgment of contempt is contrary to law is twofold. First, she argues that the finding of contempt for failure to file an attorney fee disclosure was prejudicial error because she substantially complied with the court's order. Second, she argues that the finding of contempt for failure to appear at the December 27, 1995 show-cause hearing was prejudicial error because an affidavit of bias and prejudice was pending and, therefore, she was under no duty to appear.

█ We turn first to the finding of contempt for failure to file. Karasek correctly asserts that substantial compliance may constitute a defense to a charge of contempt of court. See, *e.g., State ex rel. Curry v. Grand Valley Loc. Schools Bd. of Edn.* (1980), 61 Ohio St.2d 314, 15 O.O.3d 387, 401 N.E.2d 925; *Wagner v. Wagner* (July 10, 1987), Montgomery App. No. 10115, unreported, 1987 WL 14271. However, she has presented no evidence that she substantially complied with the trial court's order regarding the fee disclosure. In fact, the only evidence before this court relating to Karasek's compliance consists of (1) her

628

recorded statement that she would not file the type of disclosure ordered by the trial court, (2) the actual disclosure which was filed of record, [3] and (3) Jackson's testimony regarding the fees charged.

Aside from the fact that it was filed a month later than ordered, even a cursory review of the contents of Karasek's disclosure statement indicates that it was not in compliance with the trial court's order. The disclosure failed to set forth the amount of the initial fees charged. The only reference in the disclosure to Karasek's hourly fee was vastly different from that which Mr. Jackson testified he was charged. Further, although Karasek stated, in the disclosure, that she *generally* was not keeping track of her hours, she failed to account for any amount of time expended. In light of the fact that the trial court afforded Karasek the opportunity to amend the disclosure, and her failure to amend, we cannot conclude that she made a legitimate, good faith attempt to comply with the order of the trial court.

We likewise find that Karasek has not established that the judgment of contempt for her failure to appear is contrary to law. Her contention that she was not required to appear due to the pendency of an affidavit of bias and prejudice is not well taken. This court has held that "the pendency of an affidavit of disqualification does not automatically divest the trial court of power to act, even upon substantive matters." *Rife v. Morgan* (1995), 106 Ohio App.3d 843, 667 N.E.2d 450. Instead, we held as follows:

"Taking into account the ease with which a disgruntled litigant may file an affidavit of disqualification with the Supreme Court, we believe the appropriate approach is to posit that a trial judge who proceeds with substantive matters pending resolution by the Chief Justice of an affidavit of disqualification does so at the risk of those proceedings being held for naught should the Chief Justice find the affidavit of disqualification to be meritorious. We believe that the prudent trial judge would delay the proceedings until the Chief Justice rules on the affidavit * * *." *Id.* at 850, 667 N.E.2d at 454–455.

There is no evidence in the record that the trial court was aware of the pendency of the affidavit until so informed by Karasek one day after the scheduled hearing. In any event, the pending affidavit of bias was ruled to be without merit by the Chief Justice.

Furthermore, as stated by Chief Justice Moyer, the three affidavits of contempt filed in this action [4] relate solely to Jackson's dissatisfaction and disagree-

---

3. Our discussion of Karasek's claim that she filed more than one fee disclosure is set out in Assignment of Error Seven below.

4. We note that two additional affidavits of bias and prejudice were also filed against the magistrate assigned to the case.

ment with the rulings made by the trial court in the divorce action. In them, Jackson and Karasek claim that the trial court was biased or prejudiced against Jackson. Nowhere do they allege that the trial court exhibited bias or prejudice against Karasek. Thus, we conclude that even if the trial court had been barred from proceeding, it would only have been in regard to the Jacksons' divorce, not in regard to the contempt issues.

Karasek's sixth assignment of error is overruled.

## VII

Karasek's seventh assignment of error is as follows:

"The trial court made a mistake, inadvertence, in reaching a judgment of contempt for failure to file, as set forth in Ohio Civil Rule 60(B)."

Karasek claims that the trial court's judgment of contempt was based upon its mistake or inadvertence in failing to note that she was not charging her client by the hour, and by "not noting [her client's] November 16, December 11 and December 13, 1995 filing of attorney fees." This assignment of error is rather vague. However, we conclude that Karasek is attempting to argue that the trial court erred by overruling the Civ. R. 60 motion for relief from the judgment of contempt.

Civ. R. 60(B) reads as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect * * *."

In order to obtain relief pursuant to Civ. R. 60(B), the movant must demonstrate that (1) the party has a meritorious defense to present if relief is granted, (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B), and (3) the motion is made within a reasonable time. *GTE Automatic Elec., Inc. v. ARC Industries* (1976), 47 Ohio St.2d 146, 150, 1 O.O.3d 86, 88, 351 N.E.2d 113, 115–116. If the movant fails to satisfy any prong of the test for entitlement to relief under Civ. R. 60(B), relief must be denied. *Moore v. Emmanuel Family Training Ctr.* (1985), 18 Ohio St.3d 64, 67, 18 OBR 96, 99, 479 N.E.2d 879, 882–883.

We conclude that the trial court correctly overruled Karasek's Civ. R. 60(B) motion. Our review of her 60(B) motion reveals that she failed to allege entitlement to relief under any of the grounds stated in the rule. Further, her motion failed to allege that she had any meritorious defense to present if relief is granted.

Even had the motion made the necessary allegations, we would conclude that Karasek is not entitled to the requested relief. There is no evidence in the record to support her claim that the trial court mistakenly or inadvertently failed to review any relevant pleading, or that any pleadings would present a meritorious defense. While Karasek claims that she made a filing regarding attorney fees on November 11, 1995, the record contains no such document. Further, Karasek does not claim in her brief to this court that the trial court struck from the record, or refused to file, any such document. The transcript of the December 7, 1995 hearing supports the conclusion that no disclosure was filed on November 11, since upon being informed by the trial court that she had not made the required filing, Karasek did not claim that she had filed any disclosure on November 11, 1995. Instead, Karasek merely informed the trial court that she did not intend to file a disclosure in accordance with the order. Likewise, there is no evidence that Karasek filed any attorney fee disclosure on December 13, 1995, and again, she does not claim that the trial court struck or refused to docket any such document.

Additionally, it is clear from the record that the trial court did review the December 11, 1995 disclosure; that is the document that the trial court found deficient, and which precipitated the entry of the order to show cause. As previously noted, our review of the disclosure confirms the trial court's finding that it failed to comport with the requirements in the court's order.

"The issue to be decided on an appeal from the denial of a Civ. R. 60 motion for relief from judgment is whether the trial court abused its discretionary authority provided by the rule." *Moore, supra,* 18 Ohio St.3d at 66, 18 OBR at 98, 479 N.E.2d at 882. "Abuse of discretion" connotes a judgment that is unreasonable, arbitrary or unconscionable. *Quebodeaux v. Quebodeaux* (1995), 102 Ohio App.3d 502, 505, 657 N.E.2d 539, 541. We cannot say that the trial court abused its discretion in denying the relief requested.

Accordingly, Karasek's seventh assignment of error is overruled.

## VIII

Karasek's eighth assignment of error is as follows:

"The trial court prejudicially erred in disqualifying attorney Jo Karasek in future cases."

The trial court, in its sentencing entry, stated that "until further order, attorney Karasek shall not enter an appearance as an attorney of record in any case in this court except with experienced co-counsel." Karasek contends that the trial judge does not possess the authority to disqualify her from acting as

counsel in future cases. Therefore, she contends that she is permitted to appear in that court without other counsel. She cites no authority for her position.

 The exclusive authority to regulate the practice of law is vested in the Ohio Supreme Court. *Melling v. Stralka* (1984), 12 Ohio St.3d 105, 107, 12 OBR 149, 151–152, 465 N.E.2d 857, 859–860. In *Melling*, a municipal court judge entered an order prohibiting city solicitors, law directors, prosecutors and assistants thereof, from representing any criminal defendants in his courtroom. The Supreme Court held that a trial court judge does not have authority to bar identified attorneys from representing clients, generally, in legal proceedings before the judge. The court further stated that "rules of general application, which place limits on an attorney's ability to practice and/or impose 'across-the-board' disciplinary measures on members of the bar, * * * may not be promulgated by the trial or appellate courts of this state." *Id.* at 107, 12 OBR at 151, 465 N.E.2d at 859.

Similarly, in *State v. Stokes* (1989), 49 Ohio App.3d 136, 551 N.E.2d 220, certain trial judges attempted to prevent a particular attorney from practicing in their courtrooms. In issuing a writ of prohibition, the Cuyahoga County Court of Appeals held that "[a]lthough a trial court has the inherent authority to regulate the conduct of and disqualify counsel appearing in specific proceedings before it," lower court judges cannot be allowed to enforce "a broad sanction on an attorney which imposes on her a continuing restriction on her ability to practice law in all proceedings in their courtrooms." *Id.* at paragraph one of the syllabus.

We find these cases to be dispositive. In effect, the broad nature of the order issued by the trial court restricts Karasek from practicing law before that court. Since this sanction is within the exclusive province of the Supreme Court, we conclude that the trial court exceeded its authority.

Accordingly, Karasek's eighth assignment of error is sustained.

## IX

Karasek's eighth assignment of error having been sustained, the judgment of the trial court is modified by vacating that portion of the judgment prohibiting her from practicing in its courtroom without co-counsel. All of Karasek's other assignments of error having been overruled, the judgment of the trial court is affirmed as modified.

*Judgment accordingly.*

Brogan and Wolff, JJ., concur.