DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Lawrence Reynolds Jr. appeals from the judgment of the Summit County Court of Common Pleas which denied his Petition to Vacate or Set Aside Sentence, pursuant to R.C. 2953.21. We affirm.
 I.
On January 20, 1994, Reynolds was indicted for the aggravated robbery, aggravated burglary, kidnapping, attempted rape and aggravated murder of Loretta Foster on January 11, 1994. Because of the aggravated circumstances surrounding the murder, Reynolds was eligible for the death penalty. Reynolds was assigned court-appointed counsel and co-counsel.
Among various motions filed on Reynolds' behalf was a motion to suppress considerable incriminating evidence that was found in Reynolds' bedroom in his parents' home during a warrantless search conducted with the consent of Reynolds' father. After a hearing, the motion was denied on the basis that Reynolds' father possessed common authority over the room and thus his consent to the search was valid.
Several weeks before the trial was scheduled to begin, lead counsel George Keith advised the court that, although he previously had been certified by the Ohio Supreme Court as lead counsel for death penalty cases, his certification had lapsed. Keith withdrew, and the court appointed Kerry O'Brien as lead counsel, with co-counsel George Pappas continuing to serve in that capacity. The trial began on May 11, 1994, sixteen days after O'Brien's appointment.
After a trial by jury, Reynolds was convicted of aggravated murder, aggravated robbery, aggravated burglary, kidnapping, and attempted rape. After considering the mitigating circumstances in Reynolds' case, the jury rendered a unanimous verdict finding that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt and that the death penalty should be imposed. At the sentencing hearing, the judge independently found that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt and he sentenced Reynolds to death for the aggravated murder. In addition, the judge imposed sentences of ten to twenty-five years for each of the crimes of aggravated robbery, kidnapping and aggravated burglary, and a sentence of eight to fifteen years for the attempted rape. These sentences were to be served consecutively.
Reynolds appealed his convictions and death sentence to this Court, alleging violation of his rights as guaranteed by both the Constitution of the United States and the Ohio Constitution. Reynolds' appeal included allegations of denial of effective assistance of counsel, as well as errors by the trial court, and a challenge to the constitutionality of the death penalty. This Court affirmed both his convictions and death sentence. State v.Reynolds (July 10, 1996), Summit App. No. 16845, unreported. (Hereinafter, "Reynolds I.") Reynolds appealed both the convictions and the death sentence to the Ohio Supreme Court, which also confirmed both. State v. Reynolds (1998), 80 Ohio St.3d 670, certiorari denied (1998), ___ U.S. ___,141 L.Ed.2d 702. (Hereinafter, "Reynolds II.")
While his appeal to the Ohio Supreme Court was pending, on September 20, 1996, Reynolds filed a timely petition for post-conviction relief with the trial court, pursuant to R.C.2953.21. When the trial judge realized that he would likely be called to testify at any hearing on the post-conviction relief petition, he recused himself. On March 18, 1998, the Ohio Supreme Court appointed Judge Jerry Hayes to preside over the post-conviction relief petition. An evidentiary hearing on the post-conviction relief petition was scheduled for March 30. On March 27, Judge Hayes dismissed the post-conviction relief petition without a hearing. Two weeks later he issued detailed findings of fact and conclusions of law to support this decision. Reynolds filed the instant appeal, assigning as error that (1) the trial court failed to hold an evidentiary hearing on the petition after one had been scheduled, and (2) the trial court incorrectly found that numerous claims in the post-conviction relief petition were barred by res judicata, because they were, or should have been, raised by the defendant on direct appeal. We will address Reynolds' assignments of error in reverse order.
 II.
ASSIGNMENT OF ERROR II:
 The trial court erred in finding numerous claims to be [res judicata] when said claims were supported by evidence [dehors] the record.
In Ohio, petitions to vacate a conviction and/or sentence which are premised on constitutional errors are deemed to be motions for post-conviction relief, and are governed by R.C.2953.21, which provides that
 "(A)(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the
 Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed the sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
"* * *
 "(C) * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner * * *.
"* * *
 "(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending.
"* * *
 "(G) If the court does not find grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter judgment denying relief on the petition.
* * *"
Claims in a post-conviction relief petition may be barred byres judicata. State v. Dennis (Nov. 19, 1997), Summit App. No. 18410, unreported, at 5, citing State v. Steffen (1994), 70 Ohio St.3d 399,409-410. The Ohio Supreme Court explained the application of res judicata in this context thus:
 Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.
(Emphasis sic.) State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.
However, "[b]ecause an appeal from the judgment of a conviction is limited to the trial court record, a petition for post-conviction relief may defeat the res judicata bar if its claims are based on evidence outside the record." State v. Benner
(Aug. 27, 1999), Summit App. No. 18094, unreported, at 12, quotingState v. Cole (1982), 2 Ohio St.3d 112, 113-114. When a petitioner offers evidence dehors the record, he must show that the claim could not have been raised on appeal, based on evidence in the record. Id.
Even if a post-conviction relief claim is not barred by resjudicata, R.C. 2953.21 requires the petitioner to produce evidence of sufficient operative facts to demonstrate that there are substantive grounds for relief from the conviction or sentence entered against him. State v. Jackson (1980), 64 Ohio St.2d 107, syllabus. That is, the petitioner must provide some evidence of facts which, if proved, would entitle petitioner to the relief sought. The trial court must examine the petition and any supporting evidentiary material, along with the files and records in the criminal case. R.C. 2953.21(E). If the files and records below negate petitioner's claims, the trial court may summarily dismiss the petition. State v. Mayes (Jan. 20, 1999), Medina App. No. 2763-M, unreported, at 5, citing State v. Kimble (Sept. 22, 1988), Cuyahoga App. No. 54154, unreported. However, unless such an examination shows that the petitioner is not entitled to relief, the trial court must hold an evidentiary hearing. Id.
Thus, if the petitioner produces evidence to support his claim for relief and the claim cannot be resolved from the record, the trial court must hold an evidentiary hearing. State v. Kapper (1983),5 Ohio St.3d 36, 37-38, certiorari denied (1983), 464 U.S. 856,78 L.Ed.2d 157.
In considering claims in a post-conviction relief petition the trial court and the reviewing court must look at each of the petitioner's claims and determine whether the claim is barred byres judicata or, in the alternative, is based on evidence dehors
the record. The petitioner is entitled by law to have an evidentiary hearing on the claim if: the claim is based on evidence dehors the record; the claim could not have been raised on direct appeal; the record itself does not negate the claim; and the petitioner presents evidence of sufficient operative facts demonstrating that there are substantive grounds for relief.
In his assignment of error, Reynolds argues that because there is evidence dehors the record, the claim cannot be barred by res judicata. However, unless the evidence outside the record is necessary to determine the claim and the petition presents sufficient evidence to demonstrate substantive grounds for relief, the claim may still be barred by res judicata. Thus, to deal with Reynolds' assignment of error, we must not only consider the resjudicata bar but also the evidentiary bar.
Reynolds' post-conviction relief petition presents thirteen claims for relief. We now examine these claims to determine whether they are barred by res judicata, because they have been, or could have been, raised on direct appeal. We will further determine whether any claims which are not so barred fail because of insufficient evidence presented with the petition.
FIRST CLAIM FOR RELIEF
 "* * * [D]efense counsel did not request, nor did the trial court appoint, an independent pharmacologist, toxicologist or alcohol expert to assist counsel in both the innocence/guilt and mitigation phases of his trial."
Reynolds claims that he was prejudiced by defense counsel's failure to request, and thus the trial court's failure to appoint, certain experts to assist in the presentation of Reynolds' alcoholism as a mitigating factor and a defense as to the requisite mens rea of the offenses charged. His claim is supported by the affidavit of Dr. James Eisenberg, a forensic psychologist, in which he stated, "a toxicologist, pharmacologist, and/or alcohol evaluation should have been suggested by [mitigation witness] Dr. Bendo."
This Court has stated that, "a postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial."State v. White (Jun. 16, 1999), Summit App. No. 19040, unreported, at 12, quoting State v. Combs (1994), 100 Ohio App.3d 90,103, judgment affirmed (1994), 69 Ohio St.3d 1480 and certiorari denied (1995), 513 U.S. 1167, 130 L.Ed.2d 1097. Furthermore, Reynolds offers no evidence that there is a reasonable probability that the addition of expert witnesses would have changed the outcome of the guilt or the sentencing phase of his trial. Thus he does not offer evidence of sufficient operative facts to demonstrate substantive grounds for relief.
SECOND CLAIM FOR RELIEF
 "* * * [N]either the jury, nor reviewing courts have considered the mitigating factor of extreme intoxication and the role that alcohol played in Petitioner's life."
Reynolds raised on direct appeal the issue of the trial court's consideration of Reynolds' alcoholism as a mitigating factor in the capital sentencing phase. This Court addressed the issue, concluding that the trial court itself was entitled to exercise its discretion in assigning weight to this mitigating factor. Reynolds I, at 41. The Ohio Supreme Court ruled likewise. Reynolds II, 80 Ohio St.3d at 685. Although Reynolds did not raise on direct appeal the jury's consideration of alcoholism as a mitigating factor, he could have. He is therefore barred by res judicata from raising this issue here.
THIRD CLAIM FOR RELIEF
 "* * * [T]he court denied [Petitioner] the opportunity to have the court fully consider the factor of extreme intoxication as a defense regarding the specific intent crime with which he was charged."
Reynolds did not raise this as error in his direct appeal. Nor does he offer any evidence that this claim is based on evidence dehors the record. We agree with the trial court that this issue could have been raised on direct appeal, and Reynolds is barred by res judicata from pursuing this claim in the instant petition.
FOURTH CLAIM FOR RELIEF
 "* * * [T]rial counsel were deficient in their presentation of mitigation witnesses from the Reynolds family. More specifically, trial counsel failed to present testimony from
 Mr. Reynolds' former girlfriend who is the mother of his child as well as testimony from other family members, grandmother Nicole Norton (sic). * * * Further, counsel failed to present an independent pharmacologist, toxicologist and/or substance abuse expert."
The second portion of this claim duplicates claim number one and has been discussed and disposed of above. As to the first portion of this claim, Reynolds offers no evidence concerning the testimony these other family members would have offered. Reynolds does offer the affidavit of his mother, Valerie Mae Reynolds, in which she recounts some of Reynolds' personal history and a familial history of alcoholism, which information Mrs. Reynolds believed "would have been helpful to the jury." Some of this information, specifically the information about Reynolds' alcoholism, was introduced during the mitigation phase of the trial. The information Mrs. Reynolds offered about Reynolds' remote childhood history is unlikely to have impacted the course of the sentencing process.
We have held elsewhere that "[t]rial counsel's choice of witnesses with which to present this evidence [of mitigating factors] is a trial tactic. * * * The use of debatable trial tactics does not amount to ineffective assistance." State v. White (Jun. 16, 1999), Summit App. No. 19040, unreported, at 13. Nothing in Reynolds' claim or in Mrs. Reynolds' affidavit provides evidence of sufficient operative facts to demonstrate that there are substantive grounds for the relief sought.
FIFTH CLAIM FOR RELIEF
 "The death penalty is in fact administered and applied arbitrarily, capriciously and whimsically in the State of Ohio and Petitioner was sentenced to die and will be executed, pursuant to a pattern and practice of wholly arbitrary and capricious infliction of that penalty."
Petitioner has appealed his sentence to this Court and to the Supreme Court of Ohio, both of which have found the death penalty to be consonant with the Constitution of the United States and the Ohio Constitution. Both courts have further reviewed the application of that penalty to the instant case and have found that it was fairly and equitably assigned. See Reynolds I, at 14-20, and Reynolds II, 80 Ohio St.3d at 685-686. This claim is therefore barred by res judicata.
SIXTH CLAIM FOR RELIEF
 "* * * [T]he court abused its discretion when Petitioner was denied his right to allocution as guaranteed by the Ohio Rules of Criminal Procedure. * * * Ohio Rule of Criminal Procedure 32(A)(1) provides in part: `Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant, and shall also address the defendant personally and ask him if he wishes to make a statement in his own behalf or present any information in mitigation of punishment.'"
Reynolds raised this issue on appeal to this Court and the Ohio Supreme Court, and both courts have disposed of this issue. See Reynolds I, at 45-46 and Reynolds II,80 Ohio St.3d at 683-684. This claim is thus barred by res judicata.
 SEVENTH CLAIM FOR RELIEF
 "At the time of his employment, counsel were aware that many experienced mitigation specialists and social workers were available and that Dr. Bendo had never testified in a mitigation hearing before. * * * As a result of the selection of Bendo as the mitigation expert Petitioner Reynolds was denied his right to expert assistance during the mitigation phase of his trial."
In support of this claim, Reynolds again offers the Eisenberg affidavit, which states that there are five mitigation experts in the area, and Dr. Bendo was not one of them. This claim of ineffective assistance of counsel does not meet the showing required by Strickland v. Washington (1984), 466 U.S. 668,80 L.Ed.2d 674. The psychologist's affidavit does not demonstrate that defense counsels' performance fell below an objective standard of reasonableness. Id. at 688, 80 L.Ed.2d at 693-694. Nor does the affidavit demonstrate that there is a reasonable probability that the outcome of the mitigation phase of Reynolds' trial would have differed had another expert been employed. Id.
at 694, 80 L.Ed.2d at 698. Thus, the affidavit does not present evidence of sufficient operative facts to demonstrate that there are substantive grounds for the relief sought.
Reynolds also offers an affidavit of defense co-counsel Pappas. In the affidavit Pappas stated that he was responsible for selecting Dr. Bendo as the mitigation expert. Pappas further stated, "[a]t the time I selected Dr. Bendo I was aware that he was not an experienced mitigation expert." Pappas makes no further statement about the extent of Dr. Bendo's experience or the level of experience required for a mitigation expert to be effective in that role. Nor does Reynolds offer any evidence that there is a reasonable probability that the choice of a more experienced mitigation expert would have resulted in a different outcome in the mitigation process. Thus, like the affidavit of Dr. Eisenberg, this affidavit does not provide evidence of sufficient operative facts to demonstrate that there are substantive grounds for relief.
EIGHTH CLAIM FOR RELIEF
 "* * * Petitioner Reynolds was denied his right to effective assistance of counsel when counsel failed to adequately investigate the facts of Petitioner['s] case. * * * Adequate investigation would have discovered Petitioner received assistance from the Veteran's Service Commission during November and December [1993]. * * * These monies were paid to Lawrence Reynolds, Sr. to assist with household expenses during that time period. * * * Petitioner therefore had a right to an expectation of privacy in his bedroom located in his parents['] home."
In support for this claim, Reynolds attaches a copy of Veteran's Service Commission case notes which indicate that the Commission did assist Reynolds in order for him to pay his rent. This evidence is dehors the record and we will assume that it was not discovered prior to trial. Thus it is not barred by resjudicata. We will discuss this issue below, in considering Reynolds' first assignment of error.
NINTH CLAIM FOR RELIEF
 "Trial counsel requested a neurological examination and said request was granted. * * * The examination was inadequate in that basically all the physician did was check respondent's reflexes."
In support of this claim, Reynolds offers the affidavit of defense co-counsel Pappas that the neurologist who examined Reynolds saw him for only five minutes, asked him "a few general questions" and conducted no other neurological tests. There is no evidence that that this was an insufficient examination. Reynolds now claims that due to multiple head injuries he sustained as a child, a more thorough neurological examination was needed. However, he presents no evidence that he ever sustained such injuries or that a more complete neurological examination would have changed the outcome of either the guilt or the penalty phase of his trial. Thus Reynolds does not support this claim with evidence of sufficient operative facts to demonstrate that there are substantive grounds for relief. The trial court appropriately denied this claim.
TENTH CLAIM FOR RELIEF
 "The trial court abused its discretion in appointing lead counsel in a capital case sixteen days before trial and premising the appointment on counsel's agreeing to go to trial within that time frame."
This matter has already been raised on appeal to this Court and to the Ohio Supreme Court, and both appellate courts have found that defendant was not prejudiced by the appointment of new lead counsel sixteen days before trial. See Reynolds I, at 38-39 and Reynolds II, 80 Ohio St.3d at 673-674. Reynolds now offers an affidavit by lead counsel O'Brien that prior to his appointment as counsel, when the judge asked him whether he would be ready for trial in sixteen days, O'Brien indicated "by a shrug of the shoulders" that he could not do so. This statement is squarely at odds with the record of the April 25, 1994 hearing on the motion for a continuance, held to appoint lead counsel. The judge asked O'Brien if he would have sufficient time to prepare for trial, if the trial was scheduled to begin in sixteen days. O'Brien responded, "Yes, sir. This trial is ready to go forward this morning, and it is a matter of me then absorbing what Mr. Pappas and Mr. Keith have already put together." The judge then pointed out that several days would be devoted to jury selection. To this O'Brien responded, "That gives me really three weeks from today before testimony begins." The judge then questioned co-counsel Pappas about the proposed schedule, and he responded, "I am satisfied with that." Where the trial court record negates the evidence presented in the petition for post-conviction relief, the trial court may summarily deny the claim. Jackson,64 Ohio St.2d at 110. The trial court appropriately rejected this claim.
ELEVENTH CLAIM FOR RELIEF
 "* * * Petitioner Reynolds was constructively denied his right to counsel when lead counsel was appointed sixteen days prior to trial in a capital murder case."
This claim, like claim number ten, asserts that lead defense counsel had insufficient time to proceed in a capital murder case. Because this issue was addressed and rejected by this Court and by the Ohio Supreme Court during an appeal of right in a capital murder case, this claim is barred by res judicata.
 TWELFTH CLAIM FOR RELIEF
 "Petitioner Reynolds was constructively denied his right to counsel when counsel, without his express permission, indicated during opening argument that he (Reynolds) has committed the crime in question, thereby [waiving] Petitioner's Fifth Amendment right against self-incrimination. * * * While counsel's strategy throughout the proceedings in this case were (sic) in the nature of `I did it, I'm sorry', said strategic decision cannot be made without the express permission of defendant."
Reynolds contends that this claim is based on evidence dehors
the record, in that Reynolds had no opportunity to register on the record his objection to counsel's opening comments. We find this claim to be without merit.
Reynolds did not testify at the trial, in accord with his Fifth Amendment right to remain silent. However, he had two opportunities to address the court about the defense strategy. The first occasion took place without the jury present, at the close of the prosecution's case, when the judge questioned him about his decision to offer no witnesses in his own defense. This inquiry took place after defense counsel's concession of guilt during opening arguments. Reynolds acknowledged that he knowingly and voluntarily decided not to offer witnesses or to take the stand himself. He stated that no one was pressuring him to adopt this strategy. The judge then asked him, "There is no question in your mind about the procedure here?" to which Reynolds answered, "No."
Reynolds also addressed the judge and the jury in the penalty phase of the trial, in an "unsworn statement." At that time, his counsel questioned him about the consultation between Reynolds and his counsel in planning a defense. The following exchange took place:
 "Q. [by defense counsel O'Brien] Now, you have heard [defense counsel] Mr. Pappas in opening statements and trial and at this mitigation hearing. You heard me talk about the situation in closing argument and at trial. And during that time we all indicated to this jury that you had taken the life of Mrs. Foster; is that correct?
"A. Yes, sir.
"Q. And as you sit there today, is that still correct?
"A. Yes, it is.
* * *
 "Q. Larry, do you have any explanation for that act [the murder of Mrs. Foster]?
"A. I don't — I don't want to make no excuses for it.
* * *
 "Q. You didn't ask Mr. Pappas and I (sic) to raise any insanity issue, did you?
"A. No, I did not.
 "Q. You didn't ask us to raise any competency issue, did you?
"A. No, I did not.
 "Q. We discussed during the trial phase putting on a defense, and you told us basically there was no defense; is that right?
"A. That's correct, and I had no defense."
 In his post-conviction relief petition Reynolds asserts that the concession of guilt made by his defense counsel in his opening statement was made without Reynolds' consent.
 Reynolds claims that there was no opportunity for him to register his objection on the record in order for him to preserve this for direct appeal. However, the record before us clearly indicates otherwise. In his statement to the judge during the penalty phase, Reynolds acknowledged that he did not want a defense to be presented during the trial.
 When asked if that was his decision in planning his defense strategy, Reynolds stated that it was. Clearly, Reynolds had the opportunity to register his objection to this defense strategy on the record below, and he failed to do so.
Reynolds made no claim in his post-conviction relief petition that he was under coercion or duress at any time during the guilt phase or at the penalty phase of his trial to follow through with this allegedly "involuntary" defense strategy. In the face of overwhelming evidence of his guilt in a capital offense, a defendant and his counsel may agree that conceding guilt may be an effective strategy for avoiding an imposition of the death penalty. See State v. Goodwin (1999), 84 Ohio St.3d 331, 337, certiorari denied (1999), ___ U.S. ___, ___ L.Ed.2d ___. The record below, including Reynolds' own statements before the court, suggests that this was indeed the defense strategy. Reynolds' "bare allegation" now that defense counsel's concession of guilt was made without his consent is not sufficient evidence of operative facts demonstrating that he was denied effective assistance of counsel. See Kapper, 5 Ohio St.3d at 38-39.
While Reynolds may not have been able to object to defense counsel's opening remarks, it is clear from the record that Reynolds had the opportunity to object to defense counsel's strategy in his statement before the trial court during the penalty phase. "[R]es judicata bars any claim that was or could have been raised at trial or on direct appeal." State v. Dennis
(Nov. 19, 1997), Summit App. No. 18410, unreported, at 17, citingSteffen, 70 Ohio St.3d at 410. Having failed to do so, and absent any evidence of coercion or duress, Reynolds has waived this issue.
THIRTEENTH CLAIM FOR RELIEF
 "Petitioner Reynolds was deprived of his Sixth Amendment right to counsel by the state when an agent of the prosecution (police officer) elicited incriminating statements from him after his right to counsel had attached."
Petitioner moved to suppress statements he made to Detective Moss and Sergeant Bilbrey while in custody, when his counsel was not present. The trial court granted the motion as to the statements made to Moss, but denied the motion as to the statements made to Bilbrey. However, as was discussed by this Court and the Ohio Supreme Court in consideration of this issue on direct appeal, the latter statements were never admitted into evidence. Thus any error by the trial court was harmless. SeeReynolds I, at 12-13 and Reynolds II, 80 Ohio St.3d at 675. This claim is barred by res judicata.
Thus, as to claims two, three, five, six, eleven, twelve, and thirteen, we overrule Reynolds' assignment of error, because these claims were, or could have been, raised in the trial court or on direct appeal and are therefore barred by res judicata. As to claims one, four, seven, nine, and ten, we find that these claims were appropriately denied by the trial court because, although not barred by res judicata, the claims are not supported by sufficient evidence to demonstrate that there are substantial grounds for relief.
After an analysis of both the appellate and the post-conviction relief claims, it is clear that only claim eight survives, that is, the claim of ineffective assistance of counsel for failure to investigate the Veteran's Service Commission rental assistance. We now examine that claim to determine whether the trial court erred in failing to hold an evidentiary hearing on the claim.
III. ASSIGNMENT OF ERROR I:
 The trial court erred to the prejudice of Petitioner-Appellant in denying his Petition without holding an evidentiary hearing after one had been set.
We now must determine whether or not the trial court erred in failing to hold an evidentiary hearing on Reynolds' remaining claim of ineffective assistance of counsel. Unless the petition, the files and the records of the case show that Reynolds is not entitled to relief, the trial court was required to hold an evidentiary hearing on the claim. R.C. 2953.21(E).
 A.
First, we address Reynolds' concern that no evidentiary hearing was held, despite the fact that two such hearings had been scheduled. On January 8, 1998, Judge Schneiderman, the original trial judge who had already recused himself from the case, scheduled an evidentiary hearing for March 2. At the same time, a warrant was issued to the Mansfield Correctional Institute to bring Reynolds back to Summit County for the hearing. For reasons unclear from the record, on March 3, Judge Schneiderman rescheduled the hearing for March 30. These hearings were scheduled prior to the Ohio Supreme Court's appointment of Judge Hayes to preside over the post-conviction petition. After his appointment and without notice to the parties, Judge Hayes denied the petition without a hearing on March 27, the Friday before the scheduled Monday hearing.
Reynolds advances the argument that once an evidentiary hearing was scheduled, such a hearing was required. Reynolds concludes, "[a]ccepting the assignment [Judge] Hayes obviously agreed to the hearing[.]" We disagree.
Canon 3 of the Code of Judicial Conduct sets forth reasons for a judge to recuse himself voluntarily from a case. See Stateex rel. Stern v. Mascio (1998), 81 Ohio St.3d 297, 299. In the alternative, a party may file an affidavit with the Ohio Supreme Court, seeking disqualification of the judge pursuant to R.C2701.03. Upon the filing of the affidavit of disqualification, the trial court judge may determine only those matters in the case which do not affect a substantial right of any of the parties. R.C. 2701.03(D).[1] Although recusal is voluntary and disqualification is directed by the Ohio Supreme Court, "the effect of either is the same." Doerger v. Doerger (Feb. 20, 1990), Brown App. No. CA-89-05-007, unreported. The original judge, after recusal or disqualification, may only act upon matters in the case which do not affect a substantial right. Id., citing Cuyahoga Cty. Bd. of Mental Retardation v. Association
(1975), 47 Ohio App.2d 28, 37 (referring to former R.C. 2701.03). When a new judge has been appointed after the recusal of the trial judge in a post-conviction petition, it is incumbent on the new judge to consider all motions de novo. See State v. Perdue
(1981), 2 Ohio App.3d 285, 286 (discussing the appropriate de novo
review of the entire case after the recusal of the trial judge).
Once appointed, it was the duty of Judge Hayes to determine whether "there are substantial grounds for relief" stated in Reynolds' petition which would entitle him to an evidentiary hearing on his petition. R.C. 2953.21(C). The fact that Judge Schneiderman proceeded to schedule an evidentiary hearing in order to expedite the post-conviction petition process had no bearing on the duty of Judge Hayes to make a determination in this matter. The Ohio Supreme Court has held that
 [i]n a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.
State v. Jackson (1980), 64 Ohio St.2d 107, syllabus. See, also,Strickland, 466 U.S. at 668, 80 L.Ed.2d at 674. Reynolds had no right to an evidentiary hearing on his petition unless he made the threshold showing. Cole, 2 Ohio St.3d at 113. Judge Hayes had the authority and the responsibility to determine whether Reynolds had made this threshold showing to merit an evidentiary hearing on his claims.
 B.
Reynolds claims that defense counsel were ineffective because they failed to uncover the Veteran's Service Commission ("VSC") payments to Reynolds for rent, prior to the hearing on Reynolds' motion to suppress the evidence from the warrantless search of his bedroom. In support of this claim, Reynolds filed what appears to be a copy of VSC case notes dated November 15, 1993 and December 1, 1993. These notes indicate that the unemployed Reynolds claimed to have been paying rent to his parents to stay in their home.[2] This evidence was apparently discovered subsequent to Reynolds' conviction and sentencing.
In his pretrial motion to suppress, Reynolds claimed that he had been paying rent to his parents, and that his father, who had consented to the warrantless search of Reynolds' bedroom, had no "common authority" to consent to the search. Reynolds argued that the warrantless search was conducted pursuant to an unauthorized consent and the resulting evidence should be suppressed.
Police may conduct a search without a warrant so long as a third party who possesses common authority over the property voluntarily consents to the search. United States v. Matlock
(1974), 415 U.S. 164, 171, 39 L.Ed.2d 242, 250. "Common authority" exists when two or more persons have joint access or control over the property, each has the right to consent to permit inspection, and each has assumed the risk that any one of them might so consent. Id. at 172, 39 L.Ed.2d at 250, fn. 7.
Ruling on the suppression motion, the trial court found that Reynolds' father did have common authority to consent to the search and Reynolds had no expectation of privacy because he paid no rent and he had no agreement with his family that he would have exclusive control over the room. However, as the Ohio Supreme Court pointed out, absent any other agreement giving his parents common authority over the bedroom, Reynolds' payment of rent would have "given him a claim that he had a proprietary interest in his bedroom." Reynolds II, 80 Ohio St.3d at 675. Now Reynolds argues that, had defense counsel uncovered the VSC rental assistance, the trial court's ruling on the suppression of this evidence would likely have been different. We disagree.
Prior to conducting the search of Reynolds' room, the police questioned Reynolds' father at length. He stated that Reynolds had lived in the home for several years but had not paid rent for four months. Father was also questioned about whether there was any understanding between Reynolds and his parents as to Reynolds' exclusive control over his room. Father stated that there was no such understanding or expectation of privacy. Father then consented, both orally and in writing, to the warrantless search of Reynolds' bedroom.
This Court determined in Reynolds' direct appeal that the state had established at the suppression hearing that Reynolds' father had common authority over Reynolds' bedroom. Reynolds I, at 11. However, we went on to discuss the holding of the United States Supreme Court that a warrantless search based on consent by a third party who does not have common authority is valid if, at the time of the search, the police had evidence to support a reasonable belief that the third party had common authority. Id., citing Illinois v. Rodriquez (1990), 497 U.S. 177, 188,111 L.Ed.2d 148, 161. We concluded "[e]ven if this Court were to determine that defendant's father did not have common authority over defendant's room, the officers had sufficient evidence, at the time of entry, to have reasonably concluded that defendant's father had this authority." Reynolds I, at 12. Evidence that Reynolds had paid rent would not likely have altered the trial court's decision to deny the motion to suppress the evidence garnered from the search of Reynolds' room.
Thus, Reynolds' claim of ineffective assistance of counsel in this matter does not meet the requirement of Strickland,466 U.S. at 694, 80 L.Ed.2d at 698, because Reynolds has not shown that he was prejudiced by the performance of counsel in this matter.
Having so determined, we affirm the decision of the trial court that Reynolds' eighth claim does not provide substantive grounds for relief. On this basis, the trial court appropriately concluded that "the petition and the files and records of the case show the petitioner is not entitled to relief" and no evidentiary hearing was required on this claim, pursuant to R.C. 2953.21(E).
Having overruled Reynolds' assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM R. BAIRD FOR THE COURT WHITMORE, J.
BATCHELDER, J.
CONCUR
[1] This section of the Revised Code was amended, effective Nov. 20, 1996, prior to any action by the trial court judge after his recusal from the instant case.
[2] The first note stated that the VCS would assist "with up to $150.00/mo. [T]owards the HH utilities." The entry for November 15 also notes "F.O. Code 1, $96.00, 16 days to 12/1/93 Giant Eagle 75 Graham Rd., Cuyahoga FAlls, [sic] OH 44223." The December 1 entry notes "F.O. Code [sic] 1 $84.00 14 days to 12/15/93 Giant Eagle 75 Graham Rd. C.F. Ohio 44223 COCF $78.43 svc to 10/19/93."